CHARLES R. O'CONNER *et al.*

*v.*

JOHN L. WILSON *et al.*

1. SHERIFF'S RETURN—*leave to amend.* *Held,* the true rule of practice is, that the court should grant leave to a sheriff to amend his return to process as a matter of course, and without notice to the party to be affected by it, only during the term at which the cause is determined.

2. SAME—*former decisions.* The cases of *Turney* v. *Organ,* 16 Ill. 43, *Dunn* v. *Rodgers,* 43 Ill. 260, *Moore* v. *Purple,* 3 Gilm. 149, and *Morris* v. *The Trustees of Schools,* &c., 15 Ill. 266, in so far as they announce a different rule, modified.

3. SAME—*laches.* Where the application to amend was not made until nearly twelve years after the date of the return, it was *held,* that after the lapse of so long a time leave to the officer to amend his return should not be granted.

4. SAME—*amendment of—by whom to be made.* Where the return of service, upon a summons, made by a deputy sheriff, who had since died, was thought to be defective, it not appearing that his principal was present at the execution of the writ, and cognizant of the manner in which the service was made, and there being no sufficient memorandum made by the former at the time the service was had by which the amendment could be made, it was *held,* incompetent for the latter to amend the return.

5. Inasmuch as the return to process can only be amended by the facts, the amendment should be made by the officer who served the writ and knows the facts, or if by his principal, then from a memorandum made by the deputy at the time he served the writ, and which clearly and unmistakably states the facts omitted in the return.

6. SAME—*presumption as to who served the writ.* It will be presumed that the officer making a return served the writ or did what the return states was done. It can not be presumed that when a deputy sheriff says in the return the service was made by him, that the writ was executed by his principal, or that the latter was present and cognizant of what was done, or the manner in which the service was actually made.

7. SAME—*officer disqualified to amend return, by interest.* The law has prohibited a sheriff from executing process in a case in which he has an interest. So where service of a summons was made by a deputy sheriff, and the return to the process was insufficient to confer jurisdiction of the person of the defendant on the court, it was *held,* his principal, having afterwards become interested as warrantor of property sold under a judgment obtained by virtue of the proceeding, his wife, having purchased from the purchaser at the execution sale, a portion of the land sold, and he joined with his wife in a warranty deed conveying the same to another, could not properly amend the return even if in possession of the requisite facts concerning the manner of the service.

8. SAME—*jurisdiction in equity to relieve against improper amendment.* And the sheriff, by leave of the court, after his term of office had expired, having made such improper amendment, so as to obviate the objection as to jurisdiction, and it appearing he was insolvent, a court of equity had jurisdiction, upon bill filed for that purpose, to relieve the defendant in the original proceeding from the effect of the amended return—the same under such circumstances, being fraudulently made, and operating as a cloud upon his title, and there being no adequate remedy at law.

APPEAL from the Recorder's Court of the city of Chicago; the Hon. WILLIAM K. MCALLISTER, Judge, presiding.

The opinion states the case.

Messrs. ROSENTHAL & PENCE, for the appellants.

Mr. GRANT GOODRICH, Messrs. BATES & HODGES, Messrs. HOWE & RUSSELL, Messrs. RUNYON & AVERY, and Mr. J. A. CRAIN, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that Charles O'Conner died on the first of March, 1858, intestate, seized of the premises in question, and leaving surviving him his widow, Ann O'Conner, and two children, appellants in this case. On the 21st of October, 1858, the widow, who was, at the time of his death, *enceinte,* was delivered of a female child who was named Ann; these three children being his only heirs at law. The widow was, on the 4th day of March, 1858, appointed administratrix of the estate of deceased, and on the 28th of the following August she filed a petition as such, in the County Court of Cook county, asking leave to sell real estate to pay debts of the estate.

Appellants and two tenants in possession were made defendants, but the posthumous child was in no manner made a party to the suit, or otherwise noticed in the proceeding. A summons was issued, directed to the sheriff to execute, returnable to the next September term of the court. On the day of its date, Samuel Miles, the deputy sheriff, served it and indorsed upon it this return: "Served this writ on the within named Mary O'Conner and Charles O'Conner, the others not found in my county, the 26th day of August, A. D. 1858.

"JOHN L. WILSON Sheriff,
"By S. MILES, Deputy."

Mary was at that time between three and four years old, and Charles between one and two. A guardian *ad litem* was appointed for them by the court, and at the return term, and before the birth of the posthumous child, a decree was rendered ordering a sale of all the premises to pay debts of the estate. About a year after the rendition of the decree, the premises were sold by the administratrix, and a large portion of the property was purchased by Gilbert L. Wilson, a brother of the then sheriff. Gilbert L. Wilson conveyed a portion of the property to Maria E. Wilson, wife of John L. Wilson, and another portion to Caroline L. Bishop, sister of himself and John L. Wilson. John L. and his wife, by general warranty deed, conveyed her portion to defendant Botsford, and he is in possession, claiming under that deed. Mrs. Bishop is in possession, by tenants, of the portion conveyed to her, claiming to own the same. Roles, Casey and Mather, claim the portion not purchased by Gilbert Wilson.

Litigation having arisen involving the validity of the proceedings in the county court, and the return on the summons being supposed to be insufficient to confer jurisdiction of the persons of the defendants upon the county court, John L. Wilson, the then sheriff, about twelve years after the service was had, amended the return. This is the amendment: "Pursuant to the order of the court, I have amended the return to this summons by inserting after the words Charles R. O'Conner, 'by reading the same to each of them,' this 21st day of March, A. D. 1870." Miles, the deputy of Wilson, died in 1862, and on the motion for leave to amend the return, no notice was given to complainants or their guardians of the intended application to the county court for leave to amend the return. Appellants entered a motion to set aside the order giving leave to amend the return, and to quash the amended return, but it was overruled by the court. Thereupon they filed a bill to set aside the amended return as a cloud on their title, and upon the ground that it was fraudulently made. On a hearing, the bill

was dismissed, and the record is brought to this court, by appeal, and errors assigned on the dismissal of the bill.

It is insisted that correct practice requires that where a case has been disposed of and passed from the docket, the sheriff should not be permitted to amend his return, unless the party to be affected by it shall be notified. This is the rule in all other cases of amendment of a record, and it would seem that no well founded distinction exists, or sufficient reason can be assigned why the same rule should not apply to the amendment of the officer's return. This case fully illustrates the necessity of giving parties an opportunity to be heard on such an application. Here it was supposed that the return was insufficient to give the court jurisdiction of the persons, and if so, no title to valuable property passed under the proceedings. And by an amendment of the return so as to show jurisdiction, the evidence of the rights of the parties is reversed. Before the amendment, if the return was insufficient, the title would appear to be in appellants, while, after the amendment, it would appear to be in the purchaser at the sale by the administratrix, or his grantees. In case the return fails to show such a service as gives the court jurisdiction of the person of the defendant, a subsequent amendment, that shows such jurisdiction, is vital to the rights of the parties, and is as effectual to change the evidence of title, as a conveyance, or the judgment or decree itself.

To permit such amendments, as a matter of course, without notice, and by any person who may have been in office at the time, and who may subsequently have become insolvent, and whose sureties may be in like condition, or who by lapse of time have become released, would be calculated to work great wrong and injustice. The true rule of practice, upon much and mature reflection, we think, should only permit such amendments as a matter of course, and without notice, during the term at which the cause is determined. We are, therefore, of opinion that the cases of *Turney* v. *Organ,* 16 Ill. 43, *Dunn* v. *Rodgers,* 43 Ill. 260, *Moore* v.

*Purple,* 3 Gilm. 149, and *Morris* v. *Trustees,* 15 Ill. 266, should be modified so far as they announce a different rule.

It is next objected that the return was made by the deputy sheriff, and the amendment was made by the person who was then sheriff, and his principal. In such a case, the presumption is, that the person making the return served the writ, or did what the return states was done. We can not presume, when the deputy says the service was made by him, that the writ was executed by his principal, or that he was present and cognizant of what was done, or the manner in which service was actually made. And in this case, it is rendered almost morally certain that Wilson did not serve this writ, as he says he had Miles as a deputy for the county court, and that he served the process of that court. He further says, that he himself served but few writs during his term of office. Hence, it is not at all even probable he ever knew that such a writ was ever issued. This court has held that where a service is defective, and the officer making it is dead, it can not be aided by parol evidence that due service was in fact made. *Wilson* v. *Greathouse,* 1 Scam. 174. Inasmuch as the return can only be amended by the facts, it should be made by the officer who served the writ and knows the facts, or if by his principal, then by a memorandum made by the officer at the time the service was had, and which clearly and unmistakably states the facts omitted in the return.

It is a wrong that the law can not sanction, to permit records to be recklessly amended by persons who are ignorant of the facts inserted as an amendment. It would be in violation of every rule of law to place the rights of parties in such hazzard, that interest, prejudice or recklessness of irresponsible persons might thus destroy them at will. Yet, when a service has been properly made, but through accident or inattention, the proper return has not been indorsed, the furtherance of justice requires that proper amendments should be allowed.

It is next insisted that an amendment should not be allowed, after the lapse of nearly twelve years. In the case of *Thatcher* v.

232 · O'CONNER *et al. v.* WILSON *et al.* [Sept. T.,

Opinion of the Court.

*Miller,* 13 Mass. 271, the court held that a return by a deputy sheriff can not be amended by him after a period of six years from the date of the return. The court there say, "More than six years have elapsed since the return was made, and the deputy sheriff now offers to insert an essential fact, the omission of which may render him liable to an action of damages. It would be unsafe to expose officers to such temptation. For an officer to undertake, six years after a defective return, to know with certainty the performance of a particular duty, when he is daily and hourly performing similar duties upon different persons, is more than can be expected of men, however strong their memories," and numerous other cases might be cited to the same effect. In the case of *Coughran* v. *Gutcheus,* 18 Ill. 390, on an application to amend a record four years after judgment, it was said that the motion was out of time, particularly where there is nothing to amend by in the record.

There must be a time when such motions will be considered as coming too late. In this case, it is after the lapse of nearly double the period in which actions are barred for the recovery of land under the limitation laws of 1835 and 1839, which have designated the period of seven years; and quadruple the time allowed a non-resident not served with process, to come in and have the decree opened, and be permitted to defend. While we do not undertake to fix the period within which such an application shall be made, we are prepared to hold that such an amendment can not be made after the lapse of time that intervened in this case.

Again, this amendment was improperly made, without reference to the time of the application. From all the evidence in the case, we think it not only fails to appear the sheriff had the requisite knowledge of the facts to make the amendment, but, on the contrary, it does appear that he did not have such information. He says he was not in the habit of serving process, but may have served a few writs during his continuance in office; that Miles was appointed a deputy for the county court, and served its process; that many thousand

writs were issued and served during his term, and that he gave a general superintendence to the business of the office. And further, the return as made shows the writ to have been served by the deputy.. Wilson also declines to answer whether he had any knowledge of the service, lest he might render himself liable. From these facts, who can doubt that he was entirely ignorant of this service and of the manner in which it was made? Instead of saying he knew the service was made by reading or by copy, he says he makes the amendment under the order of the court. The court had made no such order, but simply given leave to amend. That leave only implied authority, if the facts warranted it—only if the truth in reference to the service justified it. No one can suppose the court had the power to authorize an amendment by the insertion of what was untrue in fact, or if it had such power that it would authorize such injustice to be perpetrated. No officer has the legal or moral right to make a false return, or one that he does not know to be true. It seems to us that this amendment was recklessly made, when the facts disclosed wholly fail to warrant it.

Nor does it appear that there was any memorandum, which could under any circumstances authorize the amendment. The memorandum in pencil, "Served upon Charles R. and Mary O'Conner, August the 26th," does not, in the remotest degree, indicate the manner of the service, whether by copy, by reading, or in some other mode the officer may have supposed was equally valid. This memorandum discloses nothing more than was shown by the return itself. Nor can the memorandum, " 208 Huron st." lend the slightest aid. It seems to be without any significance as to the return. If it referred to the supposed residence, it would not in the slightest degree aid in determining whether a copy of the summons was delivered, or it was read to the defendants. The record seems to be barren of all facts justifying the amendment.

Again, Wilson had almost a direct interest in the amendment, as, if the return was not sufficient to confer jurisdiction,

he was liable, on his warranty, for a large sum of money, but if jurisdiction could be shown, he would escape such liability. The law has not authorized, but has prohibited, the sheriff from executing process in a case in which he has an interest. And this amendment falls as fully within the statute as if it was original service of the writ. And it is the common law rule, that an officer shall not decide his own case or execute process in his own favor. *Snydacker* v. *Brosse*, 51 Ill. 357. He was, for this reason, powerless to amend the return.

In the case of *Botsford* v. *O'Conner*, *ante*, p. 72, this court said, in reference to this return, "It may be, if the service was by reading, and the sheriff were to amend his return so as to show that fact, it might be different," from the conclusion then announced. It will be observed that this does not give leave to amend, but simply leaves the parties to apply for leave in the court below. And the parties seem to have understood that they had to apply to the court below for the purpose, as that was the course pursued. From what was there said, in the light of previous decisions of this court, the court below reasonably supposed that the amendment must be allowed, as a matter of course.

We now come to the question, whether a court of equity has jurisdiction to grant the relief sought. It abundantly appears that Wilson, who made the amendment to the return, had a direct interest in the result of the amendment. He, with his wife, had sold a considerable portion of this property, and warranted the title. If the return, as originally made, failed to confer jurisdiction, then he was liable on his warranty; but if such an amendment should be made as to obviate the objection, then he would escape that liability. We have seen that he did not profess to have the requisite information to make the amendment; and by his use of his former position as sheriff to release himself from that liability, he perpetrated a fraud on appellants that a court of equity should not sanction. He should not, while pretending to perform a duty under the law, be permitted to act alone for the promotion of his own interest

by gaining such an advantage under color of office. Again, as a general rule, the return of an officer can not be attacked in a collateral proceeding. In this case, inasmuch as Wilson is insolvent, no available remedy can be had by suing for a false return, and we can perceive no other adequate relief but by a decree in chancery. In the case of *Owens* v. *Ranstead*, 22 Ill. 161, it was held that in a proper case made, equity will relieve against the effects of a false return; that the remedy by action against an officer for a false return, is not always adequate. And this case illustrates the necessity of the rule. This false and improper return, as amended, operates as a cloud on the title of appellants, be that what it may, and they have a right to have the return restored to its original condition, so as to be unembarrassed by it in asserting their title.

For these reasons, the decree of the court below is reversed and the cause remanded.

*Decree reversed.*