## Case No. 11,804.

RICKARDS et ux. v. LADD.

[6 Sawy. 40; 8 Reporter, 518; 12 Chi. Leg. News, 1; 8 Am. Law Rec. 264; 20 Alb. Law J. 335.] [1]

Circuit Court, D. Oregon.   Aug. 21, 1879.

WRITS—AMENDED RETURN—PARTIES TO ACTION—THIRD PARTIES.

1. In the absence of legislation to the contrary, a court has the discretion to permit an officer to amend a return with or without notice, and at any time after the date thereof, so as to bind the parties to the action or those claiming under them as privies.

[Cited in Stetson v. Freeman (Kan.) 11 Pac. 435; Shenandoah Valley R. Co. v. Ashby (Va.) 9 S. E. 1004.]

2. But a court can not authorize a return to be amended so as to affect the rights of third persons acquired in good faith prior to such amendment.

3. An amended return, as between the parties to the action, or their privies, whether made with or without notice, can not be questioned by them collaterally.

[Cited in Stetson v. Freeman (Kan.) 11 Pac. 435.]

[This was an action of ejectment by William Rickards and wife against William S. Ladd, in place of J. G. Richardson.]

W. Scott Bebee, for plaintiff.
John W. Whalley, for defendant.

DEADY, District Judge. This action is brought by the plaintiffs, as citizens of California, against the defendant, as a citizen of Oregon, to recover the possession of lot No. 10 in block B in the city of Portland.

By the stipulation of the parties the cause is tried without a jury, and the following facts are considered proved: That in 1867 the plaintiffs mortgaged the premises in controversy to Ann Carney, to secure the sum of $1,000, then loaned by her to the plaintiff William Rickards; that on November 14, 1868, said Ann and Edward Carney (her husband) obtained a decree in the state circuit court for the county of Multnomah to enforce the lien of said mortgage by the sale of the premises, upon which decree the same were sold to said Edward on December 24, 1868, and on August 14, 1869, duly conveyed to him by the sheriff making such sale, and that the defendant has become the owner of all the interest in the premises so conveyed to said Edward.

The decree in Carney v. Rickards was given for want of an answer, neither of the defendants appearing in the suit. From the return of the deputy sheriff who served the summons, it appears that the wife was served personally and the husband constructively, by a copy of the summons and complaint being delivered to her for him; but it does not appear that the husband could not be

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 20 Alb. Law J. 335, and 8 Reporter, 518, contain only partial reports.]

found in the county, or that any effort was made to serve him personally.

After the commencement of this action, July 30, 1879, said deputy applied to the circuit court aforesaid for leave to amend his said return so as to state therein that "he made due and diligent search for said defendant William Rickards, in order to serve him in person, but was unable to find him within the county," which application was allowed by said court, and the return amended accordingly.

No notice of this application was given to the plaintiffs herein, and, so far as appears, no evidence or circumstance was offered or used in support thereof except the affidavit of the deputy that he verily believed he had made such search for the husband before leaving the copies of the process with the wife for him.

Upon the authority of Settlemier v. Sullivan, 97 U. S. 444, it is admitted that the service, as shown by the original return, was not sufficient to give the court jurisdiction, because it does not appear therefrom that any effort was made to serve the husband personally before attempting to make a substituted service upon his wife. But it is claimed that the amended return shows a good service, and therefore the court had jurisdiction to order the sale of the premises. To this the plaintiffs reply that the amended return, being made without notice to them of the application therefor, is invalid; and also that even such return is insufficient, because it does not show that the person upon whom the substituted service was made was "of the family" of said Rickards, as required by statute (Civ. Code Or. § 54), nor that a copy of the complaint as well as the summons was served upon the wife. In actions at law, the statute (section 54, supra) makes it necessary to serve a copy of the complaint with the copy of the summons upon each defendant; but in suits in equity, where there is more than one defendant it is sufficient to serve a copy of the complaint upon only one of them, as was done in this case. Id. § 386.

It is true that the amended return does not show that Mary Ann Rickards, upon whom the substituted service was made, was of the family of the defendant; but it does state that she was his "wife."

The proof of service of process, upon which a court takes jurisdiction to give judgment against a party that may result in depriving him of his property, ought to be distinct and certain. Every essential of the statute ought to appear to have been substantially complied with. Particularly is this the case where a personal judgment is sought to be obtained upon a constructive service. Hewitt v. Weatherby, 57 Mo. 280. It is not enough that it appears from the return of the officer that the service may have been duly made. Each essential fact of the serv-

ice must be stated explicitly, or in such terms as make it appear by necessary implication or inference. Settlemier v. Sullivan, 97 U. S. 449.

Now, a person who is the wife of a defendant is not, therefore, on any given day or hour, a member of his family within the meaning of the statute; that is, it does not necessarily follow from that fact that she is then living or being "at the dwelling-house or usual place of abode" of the defendant, within the county. In this age of locomotion and self-direction, husbands and wives do not always live under the same roof, and are often temporarily separated. Hewitt v. Weatherby, 57 Mo. 279.

But when it also appears, as it does in this case, that the wife, at the time of the substituted service, was at "the usual place of abode" of the husband, I think the necessary inference is that she was a member of the family therein, within the meaning of the statute, and a substituted service might be lawfully made upon her there.

The only other question in the case is whether the court had power to permit the deputy to amend the return without notice to the parties interested; and upon an examination of the authorities, and a careful consideration of the nature and reason of the proceeding, I think it had.

And, first, this is not a jurisdictional matter. The jurisdiction of the court depends upon the service of the process. The proof of the fact, the return, is made by the officer making the service in obedience to the command of the writ, under such regulations as the law may prescribe. The court cannot say what return shall be made, but, when made, it becomes a part of the record of the court. The defendant is not a party to the proceeding, and it is made without his consent or notice to him.

If afterwards it is discovered that a mistake has been made in the matter, the return, being now a record of the court, can only be amended by leave of the court. But still the court does not make the amendment. The authority to amend the return, as in the case of making it, is primarily in the officer, and not in the court; but, after making the return, the authority of the officer becomes qualified, so that it cannot be exercised without the consent of the court. Strictly speaking, then, the proceeding is one between the officer and the court. It is ex parte in its very nature, and no one has an absolute right to notice of it. In contemplation of law, the amended return is made under the same sanction and responsibility as the mistaken one. In effect, it becomes the return in the case, and cannot be questioned collaterally by the parties to the action or those claiming under them as privies. Freem. Ex'ns, § 365.

In support of the proposition that notice to the parties interested is necessary in case of an application to amend a return, the

plaintiff cites O'Conner v. Wilson, 57 Ill. 226. But this was a suit in equity, a direct proceeding to set aside an amended return as being fraudulently made and operating as a cloud upon the plaintiff's title. The amended return was made by the sheriff 12 years after the date of the return, and when he had become interested in maintaining the title to certain premises under a sale made in a suit in which this amended return was made; while the service was made by his deceased deputy, and there was no memorandum of the transaction or knowledge thereof upon his part by which the amendment could be honestly and intelligently made. The case is an interesting one, and contains some wholesome limitations upon the power of amending returns. The court set aside the return as being made by the principal, and not the deputy who made the service, and because he was disqualified to do so by interest; and also that, after the lapse of 12 years, leave should not be granted to amend a return. The court also laid down the rule that a court should not grant leave to amend a return, without notice to the party thereby affected, after the term at which the cause is determined. But this was confessedly a new rule, and so far modified the prior cases in that court of Turney v. Organ, 16 Ill. 43; Dunn v. Rodgers, 43 Ill. 260; Moore v. Purple, 3 Gilman, 149, and Morris v. Trustees of Schools, etc., 15 Ill. 266.

The same ruling, in effect, was made in Thatcher v. Miller, 13 Mass. 271. In this case the officer asked to amend his return after a period of six years. The court refused the application, and said: "More than six years have elapsed since the return was made; and the deputy sheriff now offers to insert an essential fact, the omission of which may render him liable to an action for damages. It would be unsafe to expose officers to so much temptation. At the same term at which a precept is returnable, to correct a mistake or omission may be highly proper; but for an officer to undertake, six years after a defective return, to know with certainty the performance of a particular duty, when he is daily and hourly performing similar duties upon different persons, is more than can be expected of men, however strong their memory." To the same effect is Hovey v. Wait, 17 Pick. 197, in which the court refused, after a lapse of seven years, to permit an officer to amend his return so as to change the date of an attachment from the 17th to the 15th of the month, and thereby give it priority over a conveyance of the same premises.

But it must be borne in mind that this is a case between the parties to the suit in which the return was amended. No rights have been acquired or changed in the meantime upon the faith of the original return. Therefore, the amended return, so far as this action is concerned, is only to have effect between the parties to the suit in which it was made. But, as was held in this court on the motion for a new trial in Mickey v. Stratton (1879) [Case No. 9,530], an amendment to a return cannot in any way affect the rights of persons not parties to the suit, which were acquired in good faith before the amendment was made.

In Emerson v. Upton, 9 Pick. 168, it was held that a mortgage made before an attachment was levied upon the same premises, as appeared from the return, should prevail over said attachment even after the return was amended, so as to show that the attachment was in fact served prior to the record of the mortgage. See, also, Newhall v. Provost, 6 Cal. 87; Webster v. Haworth, 8 Cal. 25; Freem. Ex'ns, § 365.

But an amended return is binding upon a third person who had notice of the actual service of the process or the facts contained in the amended return before acquiring any right in the property affected thereby. Haven v. Snow, 14 Pick. 28; Johnson v. Day, 17 Pick. 108.

Although the courts very generally say that an officer ought not to be allowed to amend his return, at least after the time at which it is returnable, without notice to the persons to be affected by it, yet no case has been found in which an amended return has been held invalid for want of notice, when questioned collaterally. In Kitchen v. Reinsky, 42 Mo. 436, a return was amended, without notice, after a lapse of six years. The court upheld it and said: "The discretion of the circuit court as to matters of this kind is very large, under the laws of this state. Although an amendment of the process should not be allowed after judgment, and without notice, still it will not be questioned, in the absence of anything to show an improper exercise of that discretion."

In Gavitt v. Doud, 23 Cal. 81, an amendment was sustained by which the sheriff included in his return upon an attachment and execution the very property he was then sued for taking and disposing of unlawfully. It does not appear whether the amendments were made upon notice or not, and the court, as in the case of Kitchen v. Reinsky, supra, seems to have attached some importance to the fact that it appeared the court had acted justly in allowing them.

In Barker v. Binninger, 14 N. Y. 277, a deputy sheriff had returned an execution nulla bona. The sheriff was afterwards allowed to cancel this return, and return that the writ was levied upon a horse of the defendant in the execution. Between the levy and the first return, Binninger, a stranger to the process, took the horse, and the sheriff sued him for conversion. The court upheld the amendment, although made without notice, upon the ground that Binninger was not a party to the execution, did not act upon the return, was a trespasser, and had no right in the matter which was affected by the amendment, and therefore no notice to him was

necessary. See, also, Linthicum v. Remington [Case No. 8,377]; Supervisors v. Durant, 9 Wall. [76 U. S.] 736.

But the general rule seems to be that the court has the discretion to allow a return to be amended in all cases, with or without notice, but that such amended return cannot affect the rights of third persons acquired in good faith prior thereto; and whenever an amendment is so made, it cannot be questioned collaterally by the parties to the suit or those claiming under them as privies.

At the same time it must be admitted that this discretion is liable to great abuse, which may work irremediable injury to parties. It is easy to say that a person whose rights are injuriously affected by an amended return has a remedy against the officer for a false return. But in most cases, where an amendment is allowed after a lapse of time, even much less than in this case, the strong probability is, that the officer is insolvent, and his sureties in the same condition or released; for it can hardly be that the sureties are liable for a false return of their principal made long after his term of office has expired.

As was well said by the court, in O'Conner v. Wilson, supra, "to permit such amendments, as a matter of course, without notice, and by any person who may have been in office at the time, and who may subsequently have become insolvent, and whose sureties may be in like condition, or who by lapse of time have become released, would be calculated to work great wrong and injustice."

The matter ought to be regulated by the legislature, so that, at least, no return could be amended after judgment in the case, without notice to the parties to be affected by it, nor after one year without substantial corroboration of the statement of the officer.

But as the law is, or appears to be, this amendment, as between the parties to the suit, although made without notice after a lapse of nearly 11 years, and upon the uncorroborated statement of the deputy, about a common and usual occurrence, cannot be questioned collaterally in this court, and is, therefore, so far valid.

There must be a finding for the defendant, that he is the owner of the premises.