## SHELBY M. CULLOM, Governor,

*v.*

## SAMUEL F. DOLLOFF *et al.*

1. FEES AND SALARIES—*compensation of county officers.* The constitution has fixed the maximum compensation that can be allowed to county officers in the counties of each class; and it provides that where the county board has fixed this compensation, it shall neither be increased nor diminished during the term of office, and that the General Assembly shall regulate the fees so as to reduce them to a reasonable compensation for services actually rendered.

2. Two things are apparent from these constitutional provisions—*first,* that a compensation shall be unalterably fixed for the official term of the officer; and *second,* that the county board shall fix the clerk hire and expenses of the office. But it was not intended that for clerk hire and expenses more should be fixed than was necessary, but, on the contrary, it was intended to effectually prohibit anything from being paid beyond what was actually necessary. Under these provisions, a county board is powerless to bind the county to pay more than what the clerk hire and expenses reasonably and necessarily cost. But, in any event, the board should allow the officer to retain out of fees collected a sufficient sum to pay a reasonable price for necessary clerk hire, fuel, stationery, etc., actually paid or purchased, but no more.

3. SAME—*amount of fees county officer may retain for clerk hire, etc.* A circuit clerk or other county officer can retain from the fees received by him only the amount fixed for his compensation, and such other reasonable sums as he has actually paid out for necessary clerk hire, stationery, fuel and other expenses of the office, no matter at what sum the county board may have allowed him for clerk hire, etc. The county board is prohibited, by both the constitution and the statute, from allowing a county officer any sum for clerk hire, stationery, fuel, etc., in excess of that actually paid for the same, and as such excess is to pay for services not rendered, it indirectly increases his compensation.

4.  OFFICIAL BONDS—*whether sureties on old or new bond are liable.*  Where a clerk of the circuit court was required by his sureties to give a new bond, which was given and approved in March, 1875, and it appeared that moneys came into his hands for fees since his last accounting to the county board on December 1, 1875, and before the approval of the new bond, which it was his duty to account for and pay into the county treasury on June 1, 1875, it was *held,* that the sureties on his former bond were liable for its non-payment, and that it was error to refuse evidence of the receipt of such money in a suit on the old bond.

5.  SAME—*right of action on bond of circuit clerk.*  In a suit upon the official bond of a circuit clerk, for failing to pay into the county treasury fees collected by him in excess of his compensation as fixed by the county board, and the expenses of his office actually paid for clerk hire, fuel, stationery, etc., where the board had made repeated efforts to bring him to a settlement, and finally, a few days before suit brought, ordered him to pay a sum into the treasury, it was *held,* that the action would lie without a previous auditing of his accounts, and notwithstanding the order made might have been for the payment of more than the county was entitled to receive.

APPEAL from the Appellate Court for the Third District; the Hon. CHAUNCEY L. HIGBEE, presiding Justice, and Hon. OLIVER L. DAVIS and Hon. LYMAN LACEY, Justices.  On appeal from the Circuit Court of McLean county; the Hon. CYRUS EPLER, Judge, presiding.

This was an action of debt, brought in the name of Shelby M. Cullom, Governor of the State of Illinois, for the use of McLean county, against Samuel F. Dolloff and others, his sureties, upon the official bond of Dolloff as clerk of the circuit court of McLean county.  It appears that, on the application of the sureties, the clerk was required to give a new bond, which was given on March 16, 1875.  The other material facts appear in the opinion of the court.

Messrs. FIFER & PHILLIPS, and Messrs. WILLIAMS, BURR & CAPEN, for the appellant:

This case involves a construction of section 10, article 10 of the constitution of the State.  That section requires the county board to fix the *compensation* of all county officers, with the amount of their *necessary* clerk hire, stationery, fuel and

other expenses, and provides that the *compensation* of no officer shall be increased or diminished during his term of office; and that all fees or allowances received by them in excess of their said compensation shall be paid into the county treasury.

The compensation of the officer is what he gets for his services, independent of the expenses of conducting the office, and is to be paid out of the fees earned and collected by him, and this compensation is to be fixed separate from the expenses, and, when once fixed, can not be changed.

But the expenses of the office should at all times be under the control of the board, and in no case exceed what is *necessary.* If this construction is not correct, what limitation is there in the constitution as to the amount that may be allowed under the name of compensation and expenses?

If the word *necessary* is not a limitation on the amount to be allowed for expenses, there is none at all; and a board may increase or diminish the compensation of the officer, from time to time, by increasing or diminishing his allowance for expenses; and even if the amount so allowed was left at a uniform sum, it would necessarily increase or diminish his compensation, as the expenses must necessarily vary.

It can not be presumed that the words, *necessary expenses,* can cover more than the sum actually expended; and the county was clearly entitled to a judgment for the amount collected over and above the salary and the sums paid out for expenses.

That the constitution can not be frittered away in this way and overreached by indirection, would seem to need the citation of no authorities, but we refer the court to the following: *Hall* v. *Hamilton,* 74 Ill. 437; *Hughes* v. *The People,* 82 id. 78; *Purcell* v. *Parks,* id. 346; *The People* v. *Lippincott,* 67 id. 333.

In *Kilgore* v. *The People,* 76 Ill. 548, this question was not before the court. The contest in that case was, could the county treasurer be allowed compensation as treasurer and collector both; and the court held that the treasurer was *ex*

*officio* collector, and that his allowance as treasurer covered his compensation for his whole duties.

Mr. W. S. COY, and Messrs. TIPTON & POLLOCK, for the appellees:

Counsel submitted four propositions, with authorities in their support:

1. The resolution of the board of supervisors of September 12, 1872, fixing the salary at $2500 and the necessary clerk hire at $4000, was conclusive, and neither the salary nor the clerk hire could be changed during the official term of Dolloff. Art. 10, sec. 10, Constitution; Rev. Stat. 1874, chap. 34, sec. 38; *Kilgore* v. *The People*, 76 Ill. 551; *Hughes et al.* v. *The People*, 82 id. 80; *Purcell* v. *Parks*, id. 348.

2. Even if the board had the power to change the allowance for necessary clerk hire, it was not changed so as to affect the questions in controversy in this suit, either by the resolution of June 15, 1874, or that of September 10, 1874.

3. The evidence offered in regard to fees collected after December 1, 1874, was properly excluded.

4. Even if there was money in the hands of Dolloff, belonging to the county, on the first day of December, 1874, he was under no obligation, under the evidence in the case, to pay the same into the county treasury, and the amount can not be collected under this bond and in this case. The evidence does not show that the board ever audited any of his reports, or that it ever struck a balance after deducting any salary or any unpaid salary due to him, from the gross amount received by him as clerk, and ordered him to pay the same into the county treasury.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Appellee, Dolloff, was elected to the office of clerk of the circuit court of McLean county at the general election in 1872, for four years. He entered upon the duties of the

office on the first day of December of that year, having executed the bond required by the statute, and upon which this suit was brought. It is conditioned that he shall faithfully perform the duties of the office and deliver up the papers, etc., appertaining thereto when lawfully required.

Prior to the election, the board of supervisors, on the 12th day of September, 1872, had fixed the compensation of the circuit clerk at $2500 per annum, and also fixed the amount of his necessary clerk hire at $4000 per year. It so remained until the 15th day of June, 1874, at which time the board passed this resolution:

"*Resolved,* That from the first day of July, 1874, this board will allow the circuit clerk only the necessary clerk hire of his office in lieu of the $4000 per annum heretofore allowed." And on the 10th day of the following September the board passed another resolution, which is this: "*Resolved,* That from and after December 1, 1874, the allowance for clerk hire of the clerk of the circuit court shall in no case exceed the amount actually paid for the same, as shown by his bills, verified by his affidavit."

At the February term, 1875, of the circuit court of McLean county, Dolloff was required to give a new official bond, and on the 16th day of March following he executed a new bond, which was then approved. A trial was had by the court, by consent of the parties, without a jury. The court allowed Dolloff $2500 for compensation per year for two years, ending on the first of December, 1874, amounting to $5000, and $4000 each year for clerk hire, amounting to $8000, aggregating the sum of $13,000, and found that on that day the county owed him $33.07. On the trial plaintiff offered to prove that a large sum of money came into his hands between the 1st day of December, 1874, and the 16th day of March, 1875, as fees of the office, which belonged to the county, but this evidence was rejected. This, then, presents two questions for consideration. First, was the clerk entitled to the amount fixed by the board for clerk hire before

his election? And second, was the rejected evidence admissible?

By the 10th section, article 10 of the constitution, it is provided that "The county board    *    *    *    shall fix the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel and other expenses, and in all cases where fees are provided for, said compensation shall be paid only out of, and shall in no instance exceed, the fees actually collected." The latter clause provides "That the compensation of no officer shall be increased or diminished during his term of office. All fees or allowances by them received in excess of their said compensation shall be paid into the county treasury."

The 11th section of the same article provides that "The fees of township officers and of each class of county officers shall be uniform in the class of counties to which they respectively belong." The 12th section provides that "All laws fixing the fees of State, county and township officers shall terminate with the terms respectively of those who may be in office at the meeting of the first General Assembly after the adoption of this constitution; and the General Assembly shall, by general law, uniform in its operation, provide for and regulate the fees of said officers and their successors, so as to reduce the same to a reasonable compensation for services actually rendered." The 13th section provides: "Every person who is elected or appointed to any office in this State, who shall be paid in whole or in part by fees, shall be required by law to make a semi-annual report, under oath, to some officer to be designated by law, of all his fees and emoluments." These seem to be the only constitutional provisions having any bearing on this case.

The 13th section of the Fees and Salary act (Rev. Stat. 1874, p. 503) divides the counties into three classes, and McLean county is placed in the second. And in pursuance of the 10th section of the constitution the board fixed the compensation of the clerk, and his clerk hire. It is con-

tended that he is entitled to retain the sums thus fixed annually from the fees of the office. On the other hand, it is contended that the board had the power and legally exercised it in changing the allowance for clerk hire. It is not claimed that body had the power to change his compensation, nor could that be done during his term of office, when fixed within the constitutional limit. Then was the clerk bound, after paying his salary and the amount actually expended for clerk hire, fuel, stationery, etc., to pay the balance into the county treasury, or could he retain his compensation and $4000 a year for clerk hire, etc., without reference to the amount actually paid therefor? It was admitted on the trial that Dolloff did not pay out $4000 a year for clerk hire, but that after deducting money paid for clerk hire, fuel, stationery and other expenses, there remained in his hands on the 1st day of December, 1874, from fees collected, $1253.58. But if he is permitted to retain $4000 a year for clerk hire, then the county would owe him $33.07.

The constitution controls this question. It has fixed the maximum of compensation that can be allowed in the counties in each class. And it provides that when the board has fixed the compensation of the officer, it shall be neither increased nor diminished during his term of office. It also provides that the General Assembly shall regulate the fees so as to reduce them to a reasonable compensation for services actually rendered. Two things are apparent from these provisions, first, that a compensation should be unalterably fixed for the official term of the officer. And for clerk hire and expenses no more should be paid than was necessary, but on the contrary, it was intended to effectually prohibit anything from being paid beyond what was actually necessary. And the county board was powerless to bind the county to pay more than the clerk hire and expenses necessarily cost. They could not evade, if they so desired, the constitutional prohibition. They could not allow more than the reasonable and necessary cost of these items. But in any event, the

board should allow a sufficient sum to pay a reasonable price for necessary clerk hire, fuel, stationery, etc., actually hired or purchased, but no more.

If permitted to retain what remains unexpended of the $4000 per annum for necessary clerk hire and expenses actually paid by him, it would be an evasion of the plain meaning of the constitution. It would be paying what was unnecessary for expenses, and not only so, but by indirection giving the clerk compensation for services not rendered by him, or any one else. The board fixed his compensation for services actually rendered by him at $2500 per year. And the clerks he hired to perform the labor were paid for the services actually rendered by them from fees received from the office. The surplus, then, could not be paid, as there were no actual services rendered on which it could apply. It should go into the county treasury, both under the requirements of the constitution and the statute.

To allow the clerk to retain this money would, we think, be a palpable violation of the constitution. It would be a clear evasion of its requirements. It would be an indirection that is not sanctioned in the administration of justice. The order allowing $4000 a year was not within the constitutional authority, and the order must be construed to conform to these fundamental provisions, and we must hold that this order fixing compensation and clerk hire, etc., only provides that the clerk should retain of the fees received the amount of his compensation and necessary clerk hire actually paid. With this construction it is in harmony with the constitution.

To permit the board to fix the compensation nominally within the constitutional limit, and then allow sums of money for clerk hire, fuel, stationery, and other expenses to an amount that can not be needed for such purposes, and to permit the clerk to retain the balance, would be to defeat the very purpose of this provision, which declares that such officers shall have a reasonable compensation for services actually rendered. It was designed, under this provision, to pay only for ser-

22—94 ILL.

vices actually rendered, and to prohibit all allowances for pretended claims for services never rendered.. If, in this case, clerk hire and other expenses cost only $2000 a year, and the order should be held valid, that would give this clerk as compensation $4500 a year, when the constitution has provided that he shall not receive more than $3000 per annum. Such action by the board could not be sustained. But the board, as it had a right to do, fixed his compensation at $2500 a year. And to allow him to retain all over and above what he necessarily paid out for clerk hire, would, in violation of the constitution, be to indirectly increase that allowance of compensation.

The case of *Kilgore* v. *The People,* 76 Ill. 548, is referred to as having a bearing on this case. There, it was held that when the board fixed the compensation of the county treasurer at $700, he to furnish his own fuel, stationery and clerk hire, it was valid and binding, and limited the amount he could receive to that sum ; that the compensation need not be stated at one amount, and fuel, stationery and clerk hire at another.

The case of *Hughes* v. *The People,* 82 Ill. 78, is referred to as holding that the amount of $2000 as compensation and $2500 for clerk hire having been fixed, the sheriff was entitled to that entire sum. The question here presented was not raised in that case. There was no question as to whether he had paid the $2500, or a less sum, for clerk hire. It was not questioned, and it was taken for granted he had expended the full amount, and it was said that he was entitled to both sums, and he could claim no more as fees or compensation. The controversy was as to a sum claimed by him for services over and above the $4500 fixed by the county board as the limit, and it was held he could claim nothing beyond the sum thus fixed.

The case of *Wheelock* v. *The People,* 84 Ill. 551, is referred to as holding that the order fixing compensation does not necessarily include clerk hire, fuel, stationery and other expenses, unless, as in *Kilgore's case,* it is so provided in the

order by which it is fixed. That case so holds, and answers any objection urged that the order in this case fixed an amount beyond the constitutional limit, as it was under $3000.

It is urged that the court erred in excluding the evidence that Dolloff had in his hands $625.42 belonging to the county, after deducting his compensation, clerk hire, fuel, stationery and expenses, which was received on fees after the first of December, 1874, and before the 16th day of March, 1875. Appellees contend that he was not, under the law, obliged to account for this money until the first of June, 1875, and that he could not be in default until that time, and that his sureties on this bond are not liable for money thus received. He received this money before the new bond was given, and under the law and the conditions of the first bond it was his duty to account for and pay over the money on the first day of June, 1875, and his sureties had bound themselves for the performance of all his duties, and this was unquestionably one of them. And failing in its performance, they became liable for moneys received under that bond and not paid over.

It is urged that his accounts should have been audited, and an order made that he pay the money in his hands belonging to the county into the county treasury. If the record of the proceedings of the county board may be regarded, that body made continued efforts to bring him to a settlement for a great length of time; and they did, on the 5th day of March, 1877, order him to pay $622.81 into the county treasury, which was three days before this suit was commenced. Although this order was for too large a sum, it certainly embraced what he did owe the county, and was a sufficient warrant to pay what he did owe. Had he paid the correct amount, the county could not have recovered the money thus paid of him or his sureties. But aside from this, it is agreed that if he has the right to retain only the amount paid for clerk hire and expenses, there is in his hands $1253.58, and in the stipulation as to the facts no such question is raised.

We are of opinion that the court below erred in rejecting this evidence, and for the errors indicated the judgment of the Appellate Court is reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE DICKEY, dissenting:

The statute provides in such case that if a new bond be given, * * * then the former sureties shall be entirely released "from all liabilities incurred by any such officer in consequence of business which may have come to hand" from and after the approval of the new bond, and the sureties to the new bond are to be liable for all "the official delinquencies of such officer, whether of omission or commission, which may occur" after the approval of the new bond,—but this shall not operate to release the sureties of any such officers "for liabilities incurred previous" to the filing of the new bond.

In so far as the foregoing opinion speaks of the competency of proof of the amount of moneys received as fees, between December, 1874, and the time of giving the new bond, I can not concur. Let it be assumed, that at the giving of the new bond, this officer had in his hands some $600 of moneys so received in excess of his salary and office expenses to that time, he was not at that time liable to pay it over, nor was it known, or could it be known, that he ever would be so liable. He could only become liable to pay over the same in case his salary and office expenses between that time and June, 1875, should be so far paid by receipts of other fees that the $600 would not be required to pay them. His liability to pay had not accrued, and did not exist when the new bond was given. From future liabilities these old sureties were released. They may have known that he had this money on hand, and, being unwilling to stand as sureties for the future safe-keeping of the money, may have taken these steps to close their surety-ship by terminating his office. The new sureties step in and defeat this by becoming sureties for his future fidelity. Having done so the old sureties, I think, ought not be charged

with any future default. The proof offered could only tend to prove the amount of the subsequent default, for which they were not liable.

If this ruling be correct, and the sureties of a county treasurer who has public moneys in his hands apprehend danger as to its future safe-keeping, they can not relieve themselves under this statute. The object of the statute was to enable such sureties to terminate their suretyship by terminating the term of the officer, unless new sureties were given for future fidelity.

The default in this case in this regard could not occur before June, 1875. For such default I think the sureties on the old bond are not liable, and that the new sureties are liable, even though part of the money which he failed to account for in June, 1875, came to his hands before the new bond was given. Up to that date, as to this part of the case, the officer had done his whole duty.