THE COUNTY OF LASALLE

v.

WILLIAM R. MILLIGAN.

*Filed at Ottawa October 31, 1892.*

1. FEES AND SALARIES—*fixing amount of clerk and deputy hire of county officers.* The amount allowed a sheriff for deputy and clerk hire and expenses of his office is a matter largely in the discretion of the county board, and may be changed at any time as, in its judgment, the exigency of the public service demands.

2. COUNTY OFFICERS—*compensation—to be paid only from fees earned.* Section 10, article 10, of the constitution, after providing for the fixing of the compensation and clerk hire, stationery, fuel and other expenses of county officers, provides that "said compensation shall be paid only out of, and shall in no instance exceed, the fees actually collected." The fees earned and collected by the officer constitute the only fund out of which his compensation can be paid, and any attempt on the part of the county to appropriate other funds of the county in payment will be *ultra vires* and void.

3. COUNTY BOARD—*bailiffs for courts.* While it is not in the power of the county board to hamper or obstruct the business of the courts by limiting the number of sheriff's officers in attendance thereon, the courts, or sheriffs acting under their authority, have ample power to require the attendance of as many bailiffs as may be reasonably necessary for the convenient and orderly transaction of the public business; yet such board is authorized to order and fix the salary of deputies, in its discretion.

4. SHERIFF—*compensation for washing for prisoners.* A sheriff is entitled to receive from his county, on account of washing for prisoners in jail, the amount of money actually paid out by him in procuring such washing to be done.

5. SAME—*attendance on sick prisoners.* If the sheriff employs assistance to watch and nurse a sick prisoner whose health requires it, he may collect the sum paid by him for such services of the county, but not for his own personal attendance on a sick inmate of the jail.

6. SAME—*compensation by the county for mending prisoners' clothes, bedding, etc.* It is the duty of the county to suitably and decently clothe those confined in its jail, and it makes no difference whether it is by the purchase of new or the repair of old garments, so that the prisoners are suitably provided for, as, in either event, the expense thereof is a county charge. The sheriff or keeper of the jail is required

21—143 ILL.

to furnish necessary bedding, clothing, fuel and medical aid for all prisoners under his charge, and to keep an accurate account of the same, and the county is required to pay the expense and costs of maintaining and keeping the jail and inmates.

7. SAME—*pay for guarding jail.* Section 13 of chapter 75, relating to jails and jailers, which allows the sheriff, as jailer, to employ a guard for prisoners charged with a capital offense or other high crime, at the charge of the county, is intended to apply in the absence of suitable provision by the county for the safe keeping of such prisoners, and not as a limitation upon the power of the county board to make such provision in respect to the jail, or the guarding thereof, as it may deem necessary and proper.

8. That section obviously contemplates the guarding of particular prisoners, when it is deemed advisable that for any reason they be kept in the county in which there is no sufficient jail, and applies only in such cases, and to the character of prisoners named therein.

9. The sheriff is charged with the duty of keeping in the jail all persons committed thereto by competent authority, and is held to the exercise of skill, care and diligence in the discharge of that duty. But the law does not require him to furnish guards to an insufficient jail at his own expense. He may appoint a jailer, but is not required by law to do so. On the other hand, the county is required by law to keep and maintain in good and sufficient repair a common jail, and to pay the cost and expense thereof, and of keeping and maintaining prisoners therein.

10. SAME—*refunding money received for guarding jail.* Where a county board, having knowledge of the insecurity of the county jail, audits and allows, from time to time, bills of the sheriff for money paid for guarding the same, without objection, and it appears there was no concealment or fraud on the part of the sheriff, but that he acted in the utmost good faith, and in the honest belief of his right to employ the guards, such county board will thereby ratify the act of the sheriff in the performance of the duty resting upon the county and can not recover back from the sheriff the money so paid to him.

11. SAME—*right to allowance for pay of jailer's salary, etc.* Where the county board, with full knowledge of the facts, allows and pays the sheriff, from time to time, sums of money paid by him as salary for the jailer, instead of an allowance for a guard of the jail, and there is no concealment or fraud in procuring such allowances, the county can not recover back the several sums so allowed and paid.

12. SAME—*county liable for fees—summoning jurors.* The county is liable for the sheriff's fees in summoning the jurors for the various courts of record, including mileage; and such fees, when earned, constitute a fund out of which his compensation shall be paid. The county

is liable therefor only when necessary to form a fund out of which the compensation and expenses may be paid.

13. SAME—*fees and mileage in conveying paupers and insane persons to hospitals, etc.* The fees and mileage allowed by law for conveying paupers and insane persons to hospitals, etc., do not belong to the sheriff, but in theory belong to the county. If collected by him, they must be accounted for as other fees, and any excess over his allowances paid into the county treasury. Primarily, with other fees collected, they form the fund out of which only can the salary of the sheriff and his expenses be paid.

14. By the statute the expense of conveying insane paupers to the hospitals is to be paid by the county, and other patients, not paupers, by the guardian, conservator or relative. It is the duty of the sheriff to report the fees so earned as earnings of his office, and the board must audit and allow whatever is in fact earned under the law. When this is done and he collects the amount, he is required to treat it as any other earning of his office.

15. SAME—*right to collect fees of county, in criminal cases, when there is no conviction.* The sheriff is entitled to collect from the county his fees earned in criminal cases, where the defendants are acquitted or otherwise legally discharged, for the purpose of making up his salary, if he is unable to collect enough fees from other sources for that purpose.

16. SAME—*expenses in capturing criminals charged with felonies.* The county board has the discretionary power to allow the sheriff expenses incurred by him in capturing and returning to the county persons charged with felonies, and if it makes such allowance it can not recover the same back from him.

17. SAME—*per diem for attendance on the circuit court.* By law a *per diem* is allowed by the county to the sheriff for attendance upon the courts, and this, with other fees earned, forms a fund from which the salary, etc., may be paid. If two judges should be holding courts in the same county, it is the duty of the sheriff to attend upon each, by himself or deputy, and it is the duty of the county to make an allowance of the *per diem* in each court.

18. SAME—*per diem of bailiffs.* There is no law by which the sheriff may draw the *per diem* of bailiffs attending on the courts. They are individually, and independently of the salary and expenses allowed the sheriff, to be paid $2.50 per day for performing their duties. While they are the sheriff's under-officers, they are not deputy sheriffs, and the fees of the bailiffs in no sense belong to or are part of the earnings of the office of sheriff. But when the deputy earns a fee or *per diem*, such earning is an earning of the office, to be accounted for as any other fee or emolument coming to the sheriff's hands.

19. SAME--*per diem for attendance on probate and county courts.* The sheriff is required to attend the county court, when sitting for probate business, only at the request of the judge, and he can draw the *per diem* allowed only for the time he has attended at such request. But this has no application to probate courts, and in such courts no request of the judge is required to entitle the sheriff to claim the *per diem* for attendance.

20. SAME—*fees or per diem for attending county board.* A county board has the power to ask the attendance of the sheriff or his deputy, or such other officer as it may deem essential to a proper discharge of its duties, and to pay for such service out of the county treasury; and the sheriff receiving a *per diem* is required to report the sum received therefor as fees of his office.

21. AMENDMENT—*of sheriff's returns to process—before and after term.* Returns of sheriffs or other officers may be amended, according to the truth of the matter, by the leave of court to which they are made, as well before as after judgment. At the term to which the process is returnable, leave may be granted without notice to the party affected, and as a matter of course. After the term, and after the expiration of the term of office of the officer making the return, it may be amended within any reasonable time, upon proper notice to parties to be adversely affected; but the amendment can only be made by the officer who made the return, and upon proper notice.

22. APPEALS AND WRITS OF ERROR—*reviewing questions of fact.* In cases properly coming to this court through the Appellate Court, no assignments of error can be allowed which call in question the determination of the circuit and Appellate courts of controverted questions of fact.

23. SAME—*what are controverted facts.* The facts are controverted, within the meaning of the statute, whenever they tend, either as evidentiary or subordinate facts, or as the ultimate fact, to sustain the issue made by the pleading, irrespective of whether the evidence, in itself, is or is not conflicting.

24. SAME—*presumption as to finding of facts by Appellate Court.* Where a correct proposition of law has been held by the trial court, and the Appellate Court affirms the judgment, it will be conclusively presumed in this court that the Appellate Court has found the facts as did the trial court, and that nothing enters into the judgment inconsistent with the law as held.

25. SAME—*presumption as to sufficiency of evidence.* Where the bill of exceptions is not certified as containing all the evidence heard in the trial, it will be presumed that whatever facts were necessary to sustain the action of the court were shown to exist.

26. SAME—*presumption in favor of ruling of lower court.* Where a trial is had before the court without a jury, and no questions of law are raised in the trial court in regard to the admission of testimony, or by motion to exclude the evidence, or by propositions of law submitted to be held or refused under section 42 of the Practice act, and the judgment of the trial court is affirmed in the Appellate Court, no questions of law can arise on the record in respect of the holding of the trial court, and the judgment of the Appellate Court, being conclusive of the facts, must be affirmed in this court as a matter of course. In the absence of propositions submitted to the court, it will be presumed that the law was correctly applied to the facts of the case.

27. SAME—*error in party's favor in holding propositions of law.* The party submitting propositions of law, like a party asking instructions, can not complain of error committed at his own instance; and if the law is correctly held, the question whether the evidence sustains the finding is purely one of fact, in respect of which the ultimate and final power of review is by law vested in the Appellate Courts.

28. PRACTICE—*propositions of law—of fact not allowed.* The purpose of the statute allowing the submission of propositions of law to the court trying a cause without a jury, is to enable the parties to obtain the opinion of the court upon controlling material principles of law, only. When a proposition calls for the opinion of the court upon a question of fact, it may be properly refused.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. GEORGE W. STIPP, Judge, presiding.

This was assumpsit in the LaSalle circuit court, brought by appellee to recover compensation, fees, etc., alleged to be due him from LaSalle county, and earned as sheriff thereof. Declaration was filed, to which the county pleaded, but the parties stipulated that the cause should be tried before the judge presiding, without a jury, waiving all questions of pleading, and agreeing that each party should be allowed, on the trial, to introduce any evidence that would be competent to establish a cause of action, or defense, if well pleaded, and that the trial be had upon an agreed state of facts then filed, each party having the right to introduce such further evidence as might be desired.

A stipulation of facts was filed, and the parties, at the hearing, introduced much evidence, oral and documentary. The defendant (appellant) asked thirty-five propositions to be held by the court as the law, and the court held propositions one, two, four, seven, twelve, fourteen, fifteen, sixteen, seventeen, twenty, twenty-five, twenty-six, twenty-seven, twenty-nine, thirty, thirty-two, thirty-three and thirty-five, and refused to hold propositions three, six, ten, nineteen, twenty-two, twenty-eight, thirty-one and thirty four, as asked, but of its own motion modified the same, and held the same to be the law as modified, and marked refused propositions numbered five, eight, nine, eleven, thirteen, eighteen, twenty-one, twenty-three and twenty-four.

The trial court rendered judgment in favor of the plaintiff, and against the county, for $1891.89 and costs. Proper motions and exceptions were interposed and taken to the rulings. On appeal to the Appellate Court the judgment was affirmed, and the county prosecutes this further appeal.

The facts, so far as necessary to understand the propositions determined in this court, will be found in the opinion.

Mr. M. T. MOLONEY, Mr. WILLIAM H. STEAD, and Messrs. BREWER & STRAWN, for the appellant:

If the sheriff's receipts of his office exceeded his salary and the expenses as fixed by the county board, the excess belonged to the county. Const. sec. 10, art. 10 ; *People* v. *Gregory,* 11 Bradw. 370 ; *Daggett* v. *Ford County,* 99 Ill. 334.

The fees earned and actually collected by an officer constitute the only fund out of which the expenses incurred by him in conducting his office can be paid. *Jennings* v. *Fayette County,* 97 Ill. 423 ; *Hamilton County* v. *Buck,* 8 Bradw. 248 ; *Crawford County* v. *Lindsley,* 11 id. 261 ; *Kilgore* v. *People,* 76 Ill. 548 ; *Marion County* v. *Lear,* 108 id. 343.

The washing and mending for prisoners is not a proper county charge, and if the county were liable, it would be liable

only for the amount paid by the sheriff.   Rev. Stat. chap. 75, sec. 24.

As to the right to charge the county for guarding the jail, see Rev. Stat. chap. 75, sec. 13.

As to the right to charge for jailer's salary, see Rev. Stat. chap. 75, secs. 2, 3 ; *Seibert* v. *Logan County,* 63 Ill. 156 ; *Union County* v. *Patton,* id. 458 ; *Crosson* v. *Wasco County,* 6 Ore. 215 ; *McDonald* v. *Woodbury,* 48 Iowa, 405 ; *Grubb* v. *Louisa County,* 40 id. 314 ; *Bynum* v. *Green County,* 100 Ind. 90 ; *Benton County* v. *Harmon,* 101 id. 53.

The appellee was not entitled to fees for summoning jurors to be paid by the county, and not to mileage when none is indorsed.   Rev. Stat. chap. 53, sec. 19.

Fees can not be collected of a county unless the statute expressly so provides.   *Satterfield* v. *Jefferson County,* 85 Ill. 347 ; *Marion County* v. *Lear,* 108 id. 343 ; *Bruner* v. *Madison County,* 111 id. 11 ; *Locke* v. *Davidson,* id. 19.

If there is any doubt as to whether or not a sheriff is entitled to be paid his fees and mileage for serving jurors from the county, under the present Fees and Salaries act, that doubt should be solved in favor of the county.   Dillon on Mun. Corp. (8th ed.) sec. 91 ; *Minkeeger* v. *Larne,* 23 How. 4.

The sheriff can not claim mileage when none is returned on the writs served.   *Gregg* v. *Crabtree,* 33 Ill. 274.

As to the right of sheriff to amend his return so as to show mileage, see *O'Conner* v. *Wilson,* 57 Ill. 226.

As to expenses of conveying insane persons to hospitals, etc., see Rev. Stat. chap. 85, sec. 14 ; chap. 23, secs. 70, 84 ; chap. 53, sec. 19 ; *Irvin* v. *Alexander County,* 63 Ill. 528.

As to compensation for attendance upon the circuit, county and probate courts, see Rev. Stat. chap. 52, sec. 19 ; chap. 125, sec. 19 ; chap. 37, sec. 231 ; chap. 37, sec. 257 ; *St. Clair County* v. *Irwin,* 15 Ill. 54.

As to money paid the sheriff for expenses in capturing fugitives from justice, see Rev. Stat. chap. 60, sec. 11.

Appellee was not entitled to pay for the extra time spent by him in attending upon sick prisoners.   *Grubb* v. *Louisa County,* 40 Iowa, 314;   *Bynum* v. *Green County,* 100 Ind. 90.

Messrs. MAYO & WIDMER, and Mr. THOMAS C. FULLERTON, for the appellee:

As to the right of sheriff to be paid for washing and mending of clothing of prisoners in jail, see Rev. Stat. chap. 75, secs. 16, 24; chap. 34, sec. 25.

As to charges for guarding jail and jailer's salary, see Rev. Stat. chap. 75, sec. 13; *Seibert* v. *Logan County,* 63 Ill. 155; *Union County* v. *Patton,* 63 id. 458.

As to the liability of county to sheriff for summoning grand and petit jurors, and powers of county board, see Dillon on Mun. Corp. sec. 55: Rev. Stat. chap. 34, secs. 24, 25; chap. 78, secs. 1, 2, 9; chap. 53, secs. 19, 36; 51.

As to the amendment of the sheriff's returns, see Rev. Stat. chap. 7, sec. 4; *Howell* v. *Insurance Co.* 62 Ill. 50; *Smith* v. *Clinton Bridge Co.* 13 Bradw. 572; *O'Conner* v. *Wilson,* 57 Ill. 227.

As to the other points, counsel referred to various statutes and authorities, and commented on the facts.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This case having properly come to this court through the Appellate Court, no assignments of error can be allowed which call in question the determination of the circuit and Appellate courts of controverted questions of fact.   By section 89, paragraph 90, chapter 110, of the Revised Statutes, it is provided that the Supreme Court shall examine such cases as to questions of law, only, and no assignment of error shall be allowed calling in question the determination of controverted questions of fact by the lower courts.   *Kerfoot* v. *Cromwell Mound Co.* 115 Ill. 502; *Chicago, Rock Island and Pacific Railroad Co.* v. *Lewis,* 109 id. 120; *City of Aurora* v. *Brown,* id. 165; *Chicago,*

*Burlington and Quincy Railroad Co.* v. *Bell,* 112 id. 360 ; *Felix* v. *Scharnweber,* 119 id. 445 ; *Postal Telegraph Cable Co.* v. *Lathrop,* 131 id. 575.

It has been so often held that the facts are "controverted," within the meaning of this statute, whenever they tend, either as evidentiary or subordinate facts, or as the ultimate fact, to sustain the issue made by the pleading in the cause, irrespective of whether the evidence, in itself, is or is not conflicting, that there is no necessity for re-stating the rule or the reasons in support of it. (See *Exchange Nat. Bank* v. *Chicago Nat. Bank,* 131 Ill. 547 ; *Cothran* v. *Ellis,* 125 id. 496, and cases cited on p. 505.) It has also become the settled rule, that where the trial is had before the court without the intervention of a jury, and no questions of law are raised in the trial court in regard to the admission of testimony, or by motion to exclude the evidence, or by propositions of law submitted to be held or refused under the forty-second section of the Practice act, and the judgment of the trial court is affirmed in the Appellate Court, no questions of law can arise on the record in respect of the holding of the trial court, and the judgment of the Appellate Court being conclusive of the facts, must be affirmed in this court as a matter of course. (*Tibballs* v. *Libby,* 97 Ill. 552 ; *Hobbs* v. *Ferguson's Estate,* 100 id. 232 ; *St. Louis Stock Yards* v. *Wiggins Ferry Co.* 102 id. 514 ; *Farwell* v. *Shove,* 105 id. 61 ; *Hardy* v. *Rapp,* 112 id. 359 ; *Northwestern Benevolent and Mutual Aid Ass.* v. *Hall,* 118 id. 169 ; *McIntire* v. *Sholty,* 121 id. 660 ; *Montgomery* v. *Black,* 124 id. 57 ; *Savings Bank* v. *Bornman,* id. 200 ; *Exchange Nat. Bank* v. *Chicago Nat. Bank, supra ; Dwelling House Ins. Co.* v. *Butterly,* 133 id. 534 ; *Merrimac Paper Co.* v. *Illinois Trust and Savings Bank,* 129 id. 296.) In the absence of propositions submitted to the court, it will be presumed that the law was correctly applied to the facts of the case. (Starr & Curtis, sec. 41, par. 42, chap. 110.) It will follow, as a necessary result, that with propositions of law submitted to

be held or refused, as with instructions asked, the party submitting them can not complain of error committed at his own instance; and also, that if the law is correctly held, the question of whether the evidence sustains the finding is purely one of fact, in respect of which the ultimate and final power of review is, by law, vested in the Appellate Courts.

At the general election in November, 1882, appellee was elected sheriff of LaSalle county, duly qualified, and entered upon the discharge of the duties of the office the first Monday in December following, and continued in office the full term of four years. On the trial, the record of the board of supervisors of the county was introduced in evidence, showing that the salary of the sheriff was fixed for said term at $2000 per annum, the salary of one deputy at $900 per annum, and of five deputies at $750 per annum each, and also allowing to the sheriff the necessary traveling expenses of himself and deputies, and requiring him to keep an accurate account thereof. The provision for deputies was, it appears, made under the apprehension that there was no law authorizing the appointment of bailiffs, and that it was necessary to appoint a sufficient number of deputies to discharge the public duty; but this misapprehension is of no possible importance, for the reason that the amount allowed for deputy and clerk hire and expenses of the office is largely in the discretion of the county board, and might be·changed at any time, as in its judgment the exigency of the public service demanded. (*Cullom* v. *Dolloff*, 94 Ill. 330; *Briscoe* v. *Clark County*, 95 id. 309; *The People* v. *Foster*, 133 id. 509; *Daggett* v. *Ford County*, 99 id. 334.) While it was not in the power of the board of supervisors to hamper or obstruct the business of the courts by limiting the number of sheriff's officers in attendance thereon, the courts, or sheriffs acting under their authority, having ample power to require the attendance of as many bailiffs as may be reasonably necessary for the convenient and orderly transaction of the public business, (*The People* v. *Foster*,) yet the board

were authorized to order and fix the salary of deputies, in their discretion.

The sheriff, during his term of office, made eight semi-annual reports at the times required by the statute, and in apparent compliance therewith, showing, among other things, fees earned in criminal and civil cases uncollected, fees collected, amount of salary earned by himself and his deputies, jail expenses, including guard for the jail and jailer, expenses of himself and deputies, etc., and amount paid into county treasury, etc., the first six of which were approved by the county board, and orders aggregating many thousand dollars drawn on the treasury for balances shown. The two last were not approved, and the board refused payment from the county treasury thereon. This suit was brought to recover such balances, and for other items, for which appellee claimed he was entitled to recover. On the other hand, it was claimed that the county owed appellee nothing; that many of the items allowed appellee were over-charges; that many others were illegal, and that appellee by fraud had induced the board to allow them; that there was no fund out of which such items as were otherwise lawful could lawfully be paid by the county, and that, allowing appellee all that he was lawfully entitled to, he had received from the county, illegally, many thousand dollars in excess of any just claim, and which the county might lawfully recover back, and asking for judgment over therefor. The declaration and plea, with the stipulation filed, presented these issues.

The question presented, and arising under the propositions submitted by appellant to be held as the law, naturally fall into two classes: First, those pertaining to items allowed by the board for the first three years, and which it is claimed should be allowed for the fourth year, for which the payment has been or would be made to appellee as part of his salary and of the expenses of the office, such as money expended in washing and mending for prisoners, guarding the jail, and

the like; and second, those relating to the earnings of the office, which, while not payable to the officer, may be treated as a fund out of which his salary and expenses may be paid. We will consider these questions practically in the order presented by counsel, having regard for convenience to the foregoing classification.

*First*—No proposition of law was asked or question of law raised in respect of the various amounts included in the reports of the sheriff for victualing prisoners, and the matter of this allowance or disallowance is not before us.

· *Second*—At the instance of appellant the trial court held (proposition 4): "The law is, that the plaintiff, while sheriff, was not entitled to receive from the county of LaSalle, on account of washing for prisoners in the jail of said county, any amount whatever in excess of the money actually paid out by him in procuring said washing to be done." This was fully authorized by sections 22 and 24, chapter 75, of the Revised Statutes. It is conceded that the proposition correctly holds the law, but it is insisted that the court disregarded it, and allowed to appellee a sum greatly in excess of the actual cost of the washing. That contention was properly addressed to the Appellate Court, and if that court had found that improper items were allowed by the trial court to enter into its finding, when considered in the light of this correct rule of law, it should have reversed the judgment, as it may do, for error of fact. When a correct proposition of law has been held by the trial court, and the Appellate Court has affirmed its judgment, it must be conclusively presumed in this court that the Appellate Court has found the facts as did the trial court, and that nothing enters into the judgment inconsistent with the law as held.

*Third*—Appellant submitted its fifth proposition as follows: ° "The law is, that the plaintiff, while sheriff, was not entitled to receive from the county, * * * on account of mending for prisoners, any pay whatever,—that it was his duty, as jailer, to mend for said prisoners, and he was compensated

therefor in the payment of his salary as sheriff, and in the amount allowed for dieting prisoners,"—which was marked refused by the court, and properly so. By section 19 of chapter 75, of the Revised Statutes, the keeper of the jail is required to furnish necessary bedding, clothing, fuel and medical aid for all prisoners under his charge, "and keep an accurate account of the same." The account is to be kept because the county is, by section 24 of the act, required to pay the cost and expenses of maintaining and keeping the jail and inmates. (*Goff* v. *Douglas County*, 132 Ill. 323.) But it is said, with seeming seriousness, that although the county must pay for clothing and bedding furnished, it can not be required to pay for its necessary mending, but the jailer must, at his own expense, keep the same in repair. It is the duty of the county to suitably and decently maintain those confined within its jail. It is a duty enjoined by law, and it can make no difference whether it is by the purchase of new or the repair of old garments that the prisoners are so suitably provided, for in either event the expense is, under the statute, a county charge.

*Fourth*—By proposition 24 a question of similar character was raised and may more appropriately be considered here. It was: "The law of this State is, that the plaintiff was not entitled to pay from the county of LaSalle for attendance upon sick prisoners, in addition to his salary as sheriff and the amount allowed him for dieting prisoners,"—which was marked by the court refused. If the proposition was intended to hold that plaintiff was not entitled to pay for his personal attendance upon sick prisoners it would contain a correct proposition of law. The officer took the office *cum onere* every duty to be performed, but counsel state the rule too broadly when they say that he was bound to devote his personal time to the care of prisoners. It was his duty to see that they were properly cared for, devoting such personal attention as was necessary and other duties of his office would permit. But upon looking into the record, as we may do for this pur-

pose, we do not find that the bills rendered were for the personal services or attendance of the sheriff, but for the pay of persons whom he had employed for that purpose. There is no pretense or claim that the services were not absolutely necessary, or that they were not rendered, or that the price charged was unusual or unreasonable. The amount paid for the entire term aggregated $170.25, and we are of opinion that the court properly marked the proposition refused. The sheriff, as keeper of the jail, was, by section 19 of the act above quoted, required to furnish medical aid to all prisoners in his charge, and by section 24 the county is required to pay for the same. What would be a proper keeping of a person in health would not be a proper keeping of the sick. If the proper keeping of a prisoner requires that he have medicine, it must be furnished; if his condition requires the attendance of a physician, one must be called; if he requires nursing or watching, his proper keeping demands that it shall be provided. The officer having the prisoner in charge, who, willfully or through gross negligence, should fail, in a proper case, to provide either, would be guilty of gross violation of his duty.

*Fifth*—Appellant submitted, to be held as the law, proposition 6, as follows: "The law is, that the plaintiff, as keeper of the jail of said county, was not authorized to employ a jail guard, and that the county was not liable to pay therefor unless the plaintiff, as keeper of said jail, had in his custody a person or persons charged with a capital offense or other high crime, and there was no jail in his county, or that the jail was insufficient, and not then unless he had first received the advice of one of the judges of the circuit court or the advice of the judge of the county court of said county." The court modified the proposition by striking out the words, "and not then unless he had first received the advice of one of the judges of the circuit court or the advice of the judge of the county court of said county," and held the same as modified. This is assigned as error.

It appears that very shortly after appellee entered upon the office the jail was broken and prisoners escaped. He thereupon, still having in custody persons charged with capital offense or other high crime, obtained the advice, in writing, of one of the judges of the circuit court of the county, in compliance with section 13 of chapter 75 of the Revised Statutes, and employed guards. It was held in proposition 7, submitted by appellant, that this advice so obtained authorized the sheriff to employ a guard only during the time the prisoners then confined in jail or in custody, continued therein. It is not necessary to determine the correctness of this latter proposition, but it clearly shows that it was not intended by the courts to hold that the authority of the sheriff to employ such guards for the four years was or could be predicated upon the advice so obtained. It will be observed that the proposition, as submitted, was broad enough to exclude every possibility of the board of supervisors binding the county to pay for guarding the jail, unless the guards were employed by the sheriff in pursuance of the advice contemplated by said thirteenth section. It is obvious that section was intended to apply in the absence of suitable provision by the county for the safe keeping of a prisoner or prisoners charged with high crime, and not as a limitation upon the power of the proper county authorities to make such provision in respect to its jail, or the guarding thereof, as they may deem necessary and proper. That section obviously contemplates the guarding of particular prisoners where it is deemed desirable that for any reason they be kept in the county in which there is no sufficient jail, and applies only in such cases and to the character of prisoners named. By section 10 of the same act, under the same conditions,—that is, that there is no jail or the jail is insufficient,—the sheriff is authorized to commit any person in his custody to the nearest sufficient jail of another county, the expense in the latter case to be borne by the county in which the crime is alleged to have been committed.

The record shows, without contradiction, that the sheriff regarded the jail as insecure without guards. He had in custody large numbers of prisoners,—the highest number at one time being fifty-eight, and averaging for his term over twenty,—charged with the various felonies and misdemeanors. That the jail was thought to be sufficient to detain the prisoners, with a guard attending day and night, is apparent, and the subsequent experience proved the correctness of this conclusion. The sheriff is keeper of the jail, and charged with the duty of keeping therein all persons committed thereto by competent authority, and is held to the exercise of skill, care and diligence in the discharge of that duty; but there is no provision of law requiring him to furnish guards to an insufficient jail at his own expense. He may appoint a jailer, but is not required by law to do so. On the other hand, the county is required by law to keep and maintain in good and sufficient repair a common jail, and to pay the cost and expense thereof, and of keeping and maintaining prisoners therein.

Upon looking into this record for the purpose of determining the applicability of the proposition, as asked, to the case, it will be seen that the sheriff at least acted in good faith in employing guards, upon what he believed to be sufficient authority. True, he may have thought that the advice obtained from the judge authorized the employment of a guard while the jail remained in its then condition of insecurity and there were incarcerated therein persons charged with high crime, but he did not, as it seems, act upon that alone. His testimony, uncontradicted, is, (we quote from the abstract:) "I was ordered by the court and the board, at the time the prisoners dug out of jail, to employ two guards, and keep them there day and night. The board visited the jail at the time those prisoners had broken out, and told me to keep a guard. It was a verbal order, only, and after the jail seemed to be insecure." The record is silent as to the jail being at any time repaired. It is true that the members of the board

of supervisors could not bind the county by such verbal order, but the evidence establishes the fact that the sheriff acted in good faith in retaining the prisoners in the county and in employing a guard, and that the board had notice of the insecurity of the jail, and that a guard was necessary. Thereafter, as the record shows, bills were presented to the board, in the most open manner, for the expense of guarding the jail, and regularly allowed to the sheriff and paid by the county. It is not pretended there was any concealment of the items, or that the board did not have the fullest and most ample knowledge, not only of what the bills were for, but also of the necessity for the expenditure. The county board thereby ratified the act of the sheriff in the performance of a duty resting upon the county, and which the board, by proper order, ought to have recognized when the insufficiency of the jail became apparent, or else have proceeded at once to make it secure.

The power of the county to employ guards until it put the jail in sufficient repair is unquestioned. In *The People* v. *Foster, supra,* we said: "The law has wisely vested in the county board a large discretion to make such provision as the exigency of keeping the prisoners may require, and if, in the exercise of reasonable discretion, for any cause satisfactory to the county board, additional guards or assistants should be found necessary, we know of no provision of law or principle of public policy that would prevent their making a reasonable allowance therefor from the county funds." And again: "While the sheriff is *ex officio* keeper of the common jail of the county, and the burden of that duty is by law cast upon him, it is entirely competent and lawful for the county, through its proper authorities, to provide for and pay all such assistants as in their discretion may in any emergency be demanded." If the necessity existed therefor, no one would question the power of the board to include the expense of employing guards for the jail in the original order fixing the salary and amount to be allowed as expenses of the office. It can, however, make

22—143 ILL.

no difference that it was not then included, for the reason, as we have seen, the expenses of the office remain within the control of the board.

The county board having, with full knowledge, ratified the act of the sheriff and allowed the bills presented for such service, it is manifest the proposition as asked should for that reason have been refused. Nor can appellant complain of the holding of the proposition as modified. Even if inaccurate it could not be prejudicial.

Other questions sought to be raised in respect of the allowances for expenses incurred in guarding the jail are purely questions of fact, not reviewable in this court.

Much of what has been said in respect of proposition 6 applies with equal pertinency to proposition 8, also submitted by appellant, and refused. The sheriff is, by the third section of the act entitled "Jails and Jailers," authorized to appoint an assistant jailer, and to remove him at pleasure, for whose conduct the sheriff shall be responsible. The only part of proposition 8 important to be considered is as follows: "The law is, that the county is not liable to pay the plaintiff, in addition to his salary as sheriff, fixed by the county board, any compensation whatever for and on account of jailer." The county was in this proceeding seeking, by its cross-action, to recover back from the sheriff, among other things, the amounts paid him as salary of jailer, so-called. In the various semiannual reports submitted was an item for salary of jailer, and, as we have seen, the county for three years allowed and paid the same. It is insisted by counsel for appellee that the jailer was simply the day guard employed by the sheriff, and in the bills, instead of being made out as for a guard, he was called jailer, etc. This would seem to be sustained by the record, but if not, the result would be the same. There is wanting any evidence of concealment or fraud in procuring the allowance of these items. The services of the person acting as jailer were paid for by the sheriff and allowed him by the board

with full knowledge, not only of what the items in the bills represented, but of the necessities of the employment, and without any mistake of fact whatever. The county board, with full knowledge of all the facts, allowed him the money expended in keeping a deputy in charge of the jail. As before said in respect of another matter, if the allowance for such deputy, to act as jailer, had been included in the original order fixing salary and the expenses of the office which the county would pay, out of the fees earned, as it could only be paid, no one would question the authority of the board in respect thereof,—and it was so expressly held in *The People* v. *Foster, supra.*

We think it clear that so far as the cost of keeping a deputy in charge, had, as an expense of the office, been audited by the board and paid, out of the earnings of the office, the plaintiff was entitled to retain it in this suit. (*The People* v. *Foster, supra.*) It follows necessarily that the proposition was rightly refused. If appellant desired to question the right of appellee to recover for the expense incurred by him for a jailer, which the county had not paid, a proposition should have been submitted raising that question, which the court would probably have held, but if not, error could have been assigned thereon. (*Seibert* v. *Logan County,* 63 Ill. 155; *Goff* v. *Douglas County,* 132 id. 323.) In the cases cited it was held that the county was not liable, in the first, to the deputy, and in the second, to the sheriff, for the salary or per diem of the jailer appointed by the sheriff. There was in those cases no action of the county board allowing the same as part of the expenses of the sheriff's office, and it was, as we still think, properly held that the county was not liable. The liability arising because of the action of the county board in allowing the expenses of the office, it is manifest, we think, that the court could not have properly held the proposition as relating to the amounts paid by the county.

The remaining propositions submitted, as we understand them, relate to the second class,—that is, those fees and earnings of the office which, while not belonging to the officer, constitute, when collected, a fund out of which his compensation, whether as salary or expenses of his office, may be paid.

The constitution, (sec. 10, art. 10,) after providing for the fixing of compensation and clerk hire, stationery, fuel and other expenses of the office, provides: "Said compensation shall be paid only out of, and shall in no instance exceed, the fees actually collected." Thus it will be seen that the fees earned and collected by the officer constitute the only fund out of which his "compensation" can be paid. Any attempt on the part of the county to appropriate other funds of the county in payment would be *ultra vires* and void. (*Jennings* v. *Fayette County*, 97 Ill. 419; *Daggett* v. *Ford County, supra; The People* v. *Foster, supra.*) Among the fees reported as earned by appellee was a small amount for the service of venires upon *tales* jurors. The court held proposition 12, at the instance of appellant, to the effect that no fees were lawfully chargeable therefor, and it is to be presumed that the court, in its finding, excluded such items.

Large amounts were reported as fees earned in the service of venires for grand and petit jurors for the various terms of court held in the county, to which by law they were returnable, and in respect thereof appellant submitted proposition 9, as follows: "The law is, that the plaintiff was not entitled to pay from the county for and on account of fees and mileage for summoning grand and petit jurors to serve in the courts of record of said county,"—which was by the court marked refused. This was intended to mean, and was doubtlessly so understood by the court, that there was no legal liability on the part of the county to pay such fees, when necessary to form a fund out of which the compensation and expenses allowed could be paid. As a matter of course, the sheriff was not entitled to receive and retain anything beyond his salary

and the expenses allowed, but must pay over and account for any excess of fees in his hands, from whatever source derived. We said in *The People* v. *Foster, supra,* in speaking of certain jail fees received by a sheriff: "If such fees, as it must be presumed was the case, were proper charges against the county, it was the duty of the sheriff to report them to the county as fees earned, and it was entirely legitimate and proper, as in other cases where the fees are proper charges against the county, as in the service of venires and the like, for the board to audit and allow such fees, and draw an order on the county treasurer therefor in favor of the officer." Then, after holding that the officer must in his next report charge himself with the amount so received, and pay any excess in his hands, over his salary and expenses, into the county treasury, we said: "There can be no distinction between fees earned by the officer chargeable to the county and those chargeable to individuals. They must, in each instance, be paid to the officer, and he must in the same manner account therefor."

It seems clear that the duty of providing grand and petit jurors for the courts of record of the county devolves by law upon the county. No good purpose will be served by examination of previous statutes. The one now in force wrought radical changes in the general system, and instead of making the jury a charge upon suitors in the courts, they are to be paid from the county treasury,—and such has been the uniform practice ever since the passage of the present statute, and also under the act of 1865, when applicable. The grand jury are selected by the board of supervisors,—the petit jurors drawn from names of qualified persons selected by the same county authority. The jurors thus selected and drawn are required to be summoned, and required to attend for the term or part of the term for which they are drawn, at a *per diem* to be paid by the county. The county is required to furnish a suitable court house, and offices for the officers required to do the ministerial and clerical work of the courts, (sec. 27,

chap. 34,) and the necessary expense for furniture, fuel, stationery, lights, etc., for conveniently conducting and transacting the business of the courts, is a proper county charge. The juries are a necessary constituent of the court, without which its business can not be transacted, and the sheriff is by law compelled to summon them. Undoubtedly the legislature might, had it seen proper, have required the service gratuitously, and the officer taking the office *cum onere* would have been required to perform the duty without pay. This it has not done, but by express provision allowed the sheriff a fee for the service. By the nineteenth section of the Fees and Salaries act, the sheriff is allowed: "For summoning each juror, in counties of first class, fifty cents; second class, thirty cents; third class, twenty cents, with five cents mileage each way in all counties." All provisions requiring the taxation of a jury fee, or fee for jury service, in causes ordinarily cognizable in the courts of record, were directly or by implication repealed, and the provision quoted inserted in the statute. The conclusion seems irresistible that the legislature intended to make the fees for summoning jurors a county charge,—and this, it is believed, has been the uniform construction of this statute, by the courts and by the county authorities, ever since it became the law, July 1, 1872.

The case of *Bryner* v. *Supervisors*, 24 Ill. 195, is clearly distinguishable from this case. There, as here, the claim was for summoning grand and petit jurors, and this court held that the county was not liable therefor under the act of 1847, then in force. That act provided that "the county commissioners' court of any county in this State may, if they shall deem expedient to do so, allow the sheriff of their county not exceeding ten dollars for summoning the grand and petit jurors for each term of the circuit court, which sum, when so allowed, shall be paid out of the county treasury upon the order of said court, and shall be in full for said services." It also provided that the sheriff should be allowed as fees, "for summon-

ing a jury, (grand jury excepted) each case, fifty cents." It appeared that the county commissioners' court had exercised its discretion and paid Bryner as sheriff ten dollars for each term of the circuit court for which he had summoned a jury. This court held that the statute created no obligation on the county to pay the excess of his fees over and above the sum expressly limited to be paid from the county treasury. This was manifestly correct. The discretion of the county authorities had been fully expended in the payment of the highest sum allowed, and which, by the express terms of the statute, was to .be in full for the service.

*Alexander County* v. *Myers*, 64 Ill. 38, also relied on by appellant's counsel, is not in point. Myers, sheriff, presented two bills for summoning *tales* jurors in a criminal case in which the defendant was acquitted. This court held that the act of 1865, then in force, in Alexander county, created no liability upon the county for fees in criminal cases when there was not a conviction, and after noticing the statute of 1847, say the act of 1865 contains no express provision that the county shall pay sheriff's fees for summoning grand and petit jurors, but if it be assumed that the intention of the legislature was that the county should pay such fees, it would not apply to summoning talesmen, who presumably were summoned from the bystanders, or if not, the service was performed by the sheriff, or his bailiffs in attendance on the court, and receiving a per diem from the county for the performance of that duty.

We think the intention of the legislature to require each county to provide for the expense of summoning the jurors for the various courts of record held within it, is manifest, and that the circuit judge properly held in refusing said proposition. *Bruner* v. *Madison County*, 111 Ill. 11.

It is, however, insisted, that although the fees for serving venires was a county charge, the sheriff was not, in this case, entitled to mileage thereon, for the reason that he failed to

endorse the same upon the venires as part of his return. In the stipulation of fact filed it was agreed the fact was that the mileage was not by the sheriff endorsed, as required in and by section 19, chapter 53, of the Revised Statutes, but it was further stipulated, "that if the law is that the various courts out of which said venires were issued had power to allow the sheriff to amend his return on said venires so as to show said mileage, then such failure upon the part of said sheriff to endorse said mileage shall not prejudice the sheriff's claim for compensation for mileage, but it shall be treated as if said return had been properly made and the mileage properly endorsed on venires, as prescribed by law." Proposition 10, submitted by appellant, was to the effect that the mileage was not chargeable if the court found it was not endorsed, etc., on the venires returned. Proposition 11 was, in effect, that the courts of record out of which such venires issued did not have power to allow amendment of the returns of the sheriff so as to show such mileage. The court modified proposition 10 by adding thereto the words, "but the sheriff may amend his return so as to entitle him," and held the tenth proposition as modified, in lieu of propositions 10 and 11 as submitted. This is assigned as error.

The court, adopting the construction warranted by *Gregg* v. *Crabtree*, 33 Ill. 274, held that the sheriff was not entitled to have mileage taxed unless endorsed as required by the statute, but held that the courts out of which the venires issued had authority to allow the return to be amended. In this we think the court held correctly. By the fourth section of the statute of "Amendments," returns of sheriffs or other officers may be amended, "according to the truth of the matter, by the court to which the return shall be made, in its discretion, as well before as after judgment." At the term to which the process is returnable the leave may be allowed without notice to the party affected, and as a matter of course. (*O'Conner* v. *Wilson*, 57 Ill. 226; *Massachusetts Mutual Ins. Co.* v. *Kellogg*, 82

id. 614; *Windett* v. *Hamilton*, 52 id. 180.) And after the term, and after the expiration of the term of office of the officer making the return, it may be amended within any reasonable time, upon proper notice to parties to be adversely affected. *(Planing Mill Co.* v. *Merchants' Nat. Bank,* 97 Ill. 294; *Thrifts* v. *Fritz,* 101 id. 457; *Howell* v. *Albany Ins. Co.* 62 id. 50; *Terry* v. *Eureka College,* 70 id. 236; *Thatcher* v. *Miller,* 13 Mass. 271.) But the amendment can only be made by the officer who made the return, and upon proper notice. *Wilson* v. *Greathouse,* 1 Scam. 174; *O'Conner* v. *Wilson,* 57 Ill. 226.

The case of *O'Conner* v. *Wilson, supra,* cited by appellant's counsel, is in no other matter in point. This court placed its decision in that case on the ground, first, that as the sheriff proposing to amend could not originally have served the writ because of his personal interest in the litigation, he should not be permitted to amend the return for like reason; and secondly, if otherwise proper, there was no memorandum by which he could amend. Here, manifestly, the sheriff was authorized to execute the process and endorse the fees and mileage, and his interest in nowise disqualified him. There was no change in respect of his interest, and being qualified to make the endorsement originally he was authorized to amend the return. If the general rule that amendments can not be allowed at terms subsequent to the making of the record unless there is some minute or memoranda in writing to amend by, is to apply, it is, as we understand, practically admitted that the record required to be kept in the sheriff's office sufficiently supplied the data. If, however, the fact was otherwise, the bill of exceptions not being certified as containing all of the evidence heard at the trial, the presumption would be that whatever facts were necessary to give the courts authority to act were shown to exist.

Proposition 13, submitted by appellant, was properly refused. By it the court was required to hold as a fact that the sheriff had "collected from sources other than the county,

during each year of his term as sheriff, fees in excess of the salary or compensation allowed him by the board." The fact is not stated hypothetically and the opinion of the court as to the law arising thereon asked, as may be done where the hypothesis assumed finds support in the evidence, but the court, if it held the proposition, was compelled to assume the fact as established. This is improper. The purpose of the statute is to enable the party to submit propositions with a view to obtaining the opinion of the court upon material and controlling principles of law, only, and when the proposition calls for the opinion of the court upon a question of fact, it may properly be refused. For aught we can know, or are required to know, the court found the fact directly at variance with the proposition.

Appellant's propositions 14, 15, 16, 17, 20, 25, 26, 27, 29, 30, 32, 33 and 35 were each held by the court, and the presumption obtains, as we have seen, that the finding of the court was in subordination to and in conformity with the principles of law therein held.

It is urged by counsel that although the court held the law correctly, it refused to apply it to the facts, and hence included in its finding items held by it to be illegal. These questions, as before said, are settled by the judgment of the Appellate Court, and we are precluded, by express statutory provision, from re-examining them.

By proposition 18 the court was asked to hold that appellee was not entitled, as sheriff, to pay for expenses incurred by him in conveying paupers and insane persons to the insane hospitals, etc., "in addition to the fees and mileage allowed by law." These "fees and mileage allowed by law" did not belong to the sheriff, but in theory belonged to the county. If collected by him they must be accounted for as other fees, and any excess over his allowances covered into the county treasury. Primarily, with other fees collected, they formed the fund out of which only could the salary of the sheriff and the ex-

penses allowed be paid. Therefore, if the expenses referred to were paid, they were not in addition to the fees and mileage allowed by law. By the statute the expense of conveying pauper insane to the hospitals is to be paid by the county, and other patients not paupers, by the guardian, conservator or relative. If the sheriff conveys a distracted person not a pauper, he collects the mileage allowed by law from the person chargeable. In such case, as when he conveys a pauper, it is his duty to report the fees earned as an earning of his office, and the board must audit and allow whatever is in fact earned under the law. When this is done, and he collects the amount, he is required to treat it as any other earning of his office. (*The People* v. *Foster, supra.*) It is sufficient, to distinguish this case from *Irvin* v. *Alexander County*, 63 Ill. 528, to say, that the salary system, by which the earnings of the office were to be accounted for to the county, had not then been adopted. The fees there allowed by law (Gross' Stat. secs. 12, 13, chap. 50) were payable directly to the sheriff. The court held that the county was not liable to the sheriff for expenses of conveying the insane pauper, in addition to the amount allowed by law,—that the sheriff took the office for the fees provided by law and must be content therewith. We are of opinion the proposition was properly refused.

Appellant also submitted the following to be held: "By the laws of this state the plaintiff, as sheriff, was required to be in attendance upon the circuit court of LaSalle county, while in session, either in person or by one deputy only, for which attendance he was entitled to be paid by the county at the rate of three dollars per day, and in no event was the county of LaSalle liable to pay said sheriff for such attendance more than three dollars per day," (proposition 19,) but which the court modified by adding, "but if more than one deputy attended said court, performing the duties of constable, the sheriff may be paid for such attendance at $2.50 per day," and held the same as modified.

The proposition submitted should have been refused. The county of LaSalle was liable to "pay" the sheriff nothing but his salary and expenses allowed. By law a *per diem* was to be allowed by the county for attendance upon the courts, and which, with other fees earned, formed a fund from which the salary, etc., might be paid. Moreover, if, as is frequently the case, two judges should be holding court in the same county at the same time, it is the duty of the sheriff to attend upon each, by himself or deputy. A reasonable construction of the statute would make it the duty of the county to make an allowance of the *per diem* in each court. What the *per diem* earned amounted to, is purely a question of fact, which has, as we have so often seen, been settled by the judgment of a tribunal of last resort. But the proposition as asked was held with the addition before quoted. The court undoubtedly was of opinion that as bailiffs were required, if the attendance of the deputies in that capacity saved the county the expense of bailiffs, it was just that the amount thus saved should form a fund out of which deputy salaries might be paid. We know of no law by which the sheriff may draw the *per diem* of bailiffs. They are individually, and independently of the salary and expenses allowed the sheriff, to be paid $2.50 per day for performing the duty. While they are the sheriff's under-officers, they are not deputy sheriffs, and the fees of bailiffs in no sense belong to or are part of the earnings of the office of the sheriff. We held in the *Foster case* that the sheriff was not authorized to certify to their attendance, and that his act in doing so was not official. But a different rule would prevail where the deputy earned a fee or *per diem*. Such earning would be an earning of the office, to be accounted for as any other fee or emolument coming to the sheriff's hands. All of the bills were made out payable to the sheriff, and so allowed by the county board. By the resolution of the board fixing the pay of deputies it is expressly recognized that they were to perform the duties of bailiffs. The reports of com-

mittees whose duty it was to examine appellee's reports also clearly show the same fact. It was understood that the force of deputies was to perform, and were performing, the duties theretofore paid for by the county to bailiffs. Reports, regularly made to the county board, were duly examined and approved and the items therein contained were allowed. Moreover, it nowhere appears that services were charged for as service by bailiffs, and while the modification, if it had been of an instruction, would have been, for that reason, erroneous, was not, as applied to a proposition offered to be held by the court, prejudicial error. What is here said likewise applies to the modification of proposition 22, and no further discussion thereof is necessary.

Proposition 21, asked by appellants, was refused, and its refusal is assigned for error. The proposition was, in effect, that the county was liable only for the attendance of himself, or one deputy, on the probate court, and then only when attending at request of the probate judge. The proposition is based upon a paragraph of section 19 of the Fees and Salaries act, in force July 1, 1872, which provides a *per diem* to be paid the sheriff of "$2.50 per day when attending the county court, sitting for probate business, at the request of the judge, the time to be certified by the judge." There is here a clear implication that the sheriff is required to attend the county court, when sitting for probate business, only at the request of the judge, and can draw the *per diem* only for the time he has attended at such request. By the act establishing probate courts distinct from the county court, in counties having a population of seventy thousand or more, in force July 1, 1877, the sheriff is by law required to attend all of the sittings of that court, to preserve order and execute all of its lawful orders and process. Section 9 of the act expressly declares: "The sheriff, in person or by his deputy, shall attend the sittings of the probate court of his county," for the purposes mentioned. We think that this later expressed will of the legislature re-

quires the sheriff to attend the sittings of that court, in counties where a separate probate court is created, whether requested by the judge or not, and a failure so to do would be a violation of his official duty. It follows that so much of the paragraph of the Fees and Salaries act as requires him to attend only upon the request of the judge of the county court, sitting for probate business, had no application in the county of LaSalle, where we are required to take judicial notice that a separate probate court was established by law. The proposition was properly refused.

The county board, upon bills rendered, allowed appellee $162, as *per diem* for attendance upon the sessions of the county board, which appellee reported as an earning of his office, and, with other earnings, went to constitute the fund out of which salary and expenses were to be paid. This the county insists was wrongfully paid, and may be recovered back. In this view the appellant asked proposition 23, as follows: "By the laws of this State the plaintiff was not entitled to pay from the county of LaSalle for attending upon the county board of said county,"—which was refused. It is conceded there is no law requiring the sheriff to attend the sessions of the county board or allowing a *per diem* or fee therefor, and we have found none. The county board is required by law to meet in September and July, at the county seat of the county, and may meet whenever in their judgment the public business demands it, either by adjournment to a day, or upon call of a special meeting. Their meetings are required to be open, and all persons may attend them. In many of the counties of the State they are required, in discharge of the public duty, to remain in session for a considerable length of time. Can it be said that because there is no express provision authorizing it, they can not provide the necessary fuel or janitor service as it may be needed, or that they, being required to hold open meetings, may not require the attendance of the sheriff or other peace officer to preserve order dur-

ing their sittings? Clearly not. They are charged with the duty of managing the county business, (Rev. Stat. sec. 25, chap. 34,) and to do this as a body, in open session, and as an incident, power is conferred, to do all acts and things necessary for the successful and convenient dispatch of such business in the mode prescribed. To deprive them of the power to require the attendance of the sheriff or other peace officer would be fraught with danger to the public interests. We are of opinion that the county board of LaSalle county had the power to ask the attendance of the sheriff or his deputies, or such other officer as it deemed essential to a proper discharge of its duties, and reasonably remunerate such service from the county treasury. The sheriff did right in reporting the amount paid for such service as fees of his office, and in accounting for the same. The proposition was properly refused.

It is also insisted that the county board exceeded its authority in allowing appellee the expenses incurred by him in capturing and returning to the county persons who it is conceded were charged with felonies, and that the sum so paid may be recovered back by the county. Proposition 28 was substantially to the effect that the county was not liable for the sums so expended, which the court modified by adding, "but it was in the discretion of the board to pay him for such expenses," and held the same as modified. The modification was fully warranted by section 14, chapter 60, of the Revised Statutes.

It is very strenuously insisted that error has intervened, because, it is said, the court must have disregarded its holdings, and found that the sheriff was entitled to receive from the county a part or the whole of the expenses of his office out of fees earned in criminal cases where the defendant was acquitted or otherwise legally discharged, the contention being, that under the statute he would be entitled to pay from the fees earned in such criminal cases where the defendant had been acquitted or otherwise legally discharged, only in case he had not collected sufficient fees, from other sources, to pay his

salary.   This construction was given the statute in *Marion County* v. *Lear*, 108 Ill. 343, and the circuit court held the law to be as laid down in that case.

Proposition 1, submitted by appellant, was held, as follows: "The law of this State is, that an officer receiving fees, like a sheriff, the plaintiff in this case, must earn as fees, and actually collect from such earnings, a sufficient amount of money to pay his salary as fixed by the board of supervisors, his deputy hire, and all the expenses of his office, provided, that where such officer fails to collect sufficient fees to pay his own salary or personal compensation as fixed, and has earned fees in criminal cases where the defendants have been acquitted or otherwise legally discharged, such officer may receive from the county, as against such fees earned in criminal cases where the defendants have been acquitted or otherwise legally discharged, such an amount, and such an amount only, as shall make up the deficiency in his salary or personal compensation as fixed by the county board.   If the plaintiff in this case, as sheriff, collected from the earnings of his office an amount sufficient to pay his own salary or personal compensation as fixed by the county board, but failed to collect from the earnings of his office an amount sufficient to defray the expenses of his office, including deputy hire, whether the county board fixed an allowance to said plaintiff for expenses, including deputy hire, or not, such deficiency was the loss of the plaintiff.   The county board were powerless, even if willing so to do, to make up such deficiency, or any part thereof, to the plaintiff."

The court, we are bound to presume, followed its holdings, and whether the evidence showed a fund out of which, by law, the salary and expenses allowed by the trial court could be paid by the county, is purely one of fact, which, it is unnecessary to repeat, we have no jurisdiction to consider.

Upon the most careful consideration of this record we have been unable to find any error for which the case should be reversed.   That slight errors have intervened is inevitable in so

voluminous a record, but none of them are of that meritorious character requiring a reversal at our hands, and the judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*