HENRY E. LEWIS, Receiver,

*v.*

THE SPRINGVILLE BANKING COMPANY.

*Filed at Ottawa April 3, 1897.*

1. APPEALS AND ERRORS—*affirmance by Appellate Court settles controverted questions of fact.* In suits at law the judgment of the Appellate Court affirming that of the trial court conclusively settles all controverted questions of fact adversely to the appellant.

2. SAME—*controverted facts are all ultimate or evidentiary facts material to the issue.* Controverted facts are all evidentiary or ultimate facts material to the issue which are raised by the pleadings, whether the evidence is conflicting or not.

3. SAME—*extent to which Supreme Court may examine evidence in passing on assigned errors.* In passing upon rulings of the trial court on instructions and propositions of law the Supreme Court may look into the evidence, but must accept the Appellate Court's finding of facts as correct.

4. BILLS OF LADING—*delivery of bill of lading is a symbolical delivery of consignment.* The delivery of a bill of lading by the shipper to a bank as security for money advanced on his drafts, operates as a symbolical delivery of the consignment itself.

5. SAME—*endorsement of bill of lading not necessary to pass property to pledgee.* Where the shipper is the owner of the consignment, and no opposing interest or claim arises on the part of the carrier, consignee or prior endorsee of the bill of lading, the delivery of the bill of lading, unendorsed, passes a special property in the consignment to the pledgee.

6. BAILMENT—*unloading of stock to feed and water en route does not·
destroy the pledgee's lien.* The transfer of stock from the receiving
carrier to other lines of railroad, and the unloading of the same
*en route* to be fed and watered, do not destroy a pledgee's lien there-
on, acquired through a bill of lading delivered to him by the shipper
as security for money advanced.

*Lewis* v. *Springville Banking Co.* 66 Ill. App. 63, affirmed.

APPEAL from the Appellate Court for the Second Dis-
trict;—heard in that court on appeal from the Circuit
Court of LaSalle county; the Hon. CHARLES BLANCHARD,
Judge, presiding.

This is an appeal from a judgment of the Appellate
Court affirming a judgment of the circuit court of LaSalle
county on an interpleader in an attachment proceeding.

The material allegations of the interpleader, found
to be the facts in the case, are recited in the judgment
of the circuit court, as follows: "That on April 14, 1894,
Columbus P. Shur, at Springville, Utah, made two drafts,
aggregating $3613.24, directed to Brainard, Richardson
& Carpenter, through the Stock Yards National Bank of
South Omaha, Nebraska, payable to the order of the in-
terpleader; that said drafts were delivered to and cashed
by the interpleader, and by it on the same day transmit-
ted to the drawee through the Union Stock Yards Na-
tional Bank of South Omaha, Nebraska; that the money
received by Shur on said drafts was invested by him in
about 1264 sheep which he had contracted for, to ship
to Chicago; that it was agreed between said Shur and
said interpleader that the shipping contracts or bills of
lading should be delivered to the interpleader as secur-
ity for the money so advanced by it on said drafts; that
three bills of lading were issued to the said Shur, dated
April 15 and 16, 1894, for six car-loads of sheep, being
the said 1264 sheep, by the Union Pacific system, to be
by it transported to Chicago, and said three bills of lad-
ing were delivered to said interpleader as per agreement,
and by it forwarded at once to the said Union Stock

Yards' National Bank at South Omaha, Nebraska; that afterwards said drafts were returned to the interpleader for non-payment, and said three bills of lading were also returned to it; that before the said six car-loads of sheep reached Chicago, and while the same were at Stockdale, Grundy county, Illinois, unloaded from the cars and feeding and resting, the First National Bank of Kearney, Nebraska, commenced an action of debt in the circuit court of Grundy county, Illinois, against said Shur, and caused a writ of attachment in aid of said suit to be levied upon all said sheep by the sheriff of said Grundy county; that the interpleader filed its petition in said suit, claiming a special property in said sheep; that by agreement of all parties said sheep and their fleeces were sold by the said sheriff, who paid the expense of transportation, feeding and sale, and retained $1500 to abide the result of the said petition, and transmitted the balance of the proceeds of the sale of said sheep and their fleeces, amounting to $44.98, to the interpleader, the court having further found that the interpleader had, at the time said sheep were attached, as aforesaid, a special property in said sheep to the amount of said drafts; that said Shur had no interest in said sheep, as against the interpleader, until said drafts were paid; that said drafts have never been paid, in whole or in part, except said sum of $44.98 turned over by said sheriff; that there is due the said interpleader on said drafts $3779.37; that there is not sufficient to pay the said sum due the interpleader in the hands of the sheriff from the proceeds of said sheep; that said First National Bank of Kearney, Nebraska, can take nothing by its said levy on said sheep as aforesaid; that said sum of $1500 in the hands of said sheriff, as aforesaid, should be turned over by him to said interpleader and applied as a payment on said drafts.

On the hearing the court held, at the instance of the interpleader, the following propositions of law:

1. "That exhibits 'X,' 'W' and 'V' are bills of lading, as that term is accepted and understood by commercial usage and custom.

2. "When a party consigns live stock to another, and draws upon the consignee for funds with which to pay the purchase price of the live stock so shipped, any bank paying such drafts, and having delivered to it the unendorsed bills of lading or shipping receipts as security for such payment, becomes vested with a special property in the live stock sufficient to maintain replevin or otherwise protect itself against an officer who, after such delivery, attaches the live stock upon a writ against the general owner.

3. "Where a shipper is the owner of the live stock, and no opposing interest or claim arises on the part of the carrier, consignee or prior endorsee of the bill of lading, it is not necessary that the bills of lading should be endorsed to transfer the title to the live stock embraced in them.   The mere consignment of live stock by shipping does not vest in the consignee the ownership of the stock.

6. "After the delivery of the bills of lading to the Springville Bank the sheep were in the possession of the railroad company and of Remington & Co., the agisters, who fed them *en route* to their destination, merely as servants of the Springville Bank.

7. "The unloading of the sheep at Stockdale, Illinois, and the feeding of them at that point by Remington & Co., was simply in accordance with a custom and usage which prevails in shipping live stock, and which is necessary under the laws of this State, and this fact did not interfere in any way with the rights of the Springville Bank in the sheep, or deprive them of such rights as they had at the time the sheep were unloaded from the cars.

8. "The delivery of the bills of lading to the Springville Bank was evidence, considered in connection with other evidence, of a contract that the property described

in the bill of lading should be held by the bank as security for the advances made to Columbus P. Shur, and amounted to such delivery of the property that no creditor of Shur would have a right to attach the property while *en route*, or while temporarily unloaded at feed yards *en route*, for the purpose of feeding and resting before delivery to the consignee."

E. SANFORD, for appellant.

BREWER & STRAWN, (WHITTEMORE & WATT, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Thirty-two propositions were submitted on behalf of the plaintiff, all of which were marked "refused." The only questions of law presented for review here arise on the rulings of the court on those propositions. Counsel for appellant, however, discusses the evidence at considerable length, deducing conclusions of fact upon which it is insisted that the court erred in holding the propositions presented by the interpleader and refusing those asked by plaintiff. By the terms of our statute prescribing the practice in this court we can re-examine the case as to questions of law only, and can allow no assignment of error calling in question the determination of the circuit or Appellate Court upon controverted questions of fact. It is unnecessary to call attention to the many cases in which we have held, under this statute, that a judgment of the Appellate Court affirming that of a trial court must be treated by us as "conclusively settling all controverted questions of fact necessary to the maintenance of the judgment adversely to the appellant." It has also been frequently decided that controverted facts, within the meaning of the statute, are all such evidentiary or ultimate facts material to the issue raised by the pleadings, whether the evidence is conflicting or not. It is true, as contended, that we may look into the evidence

for the purpose of determining whether or not the trial
court erred in its rulings upon propositions of law, but
in doing so we are compelled to accept the finding of
facts by the Appellate Court as correct. In passing upon
propositions of law we are not permitted to review the
evidence for the purpose of determining whether or not
the Appellate Court found the facts in issue correctly.
In deciding the question we must take into consideration
the facts, not as we *might* find them, as counsel seems to
assume, but as the Appellate Court *has* found them.

It cannot be seriously contended that either of the
refused propositions correctly laid down the law of the
case, all the controverted facts being treated as found
in favor of the interpleader. Some of them, doubtless, do
announce abstract propositions of law with reasonable
accuracy, but, the facts being found adversely, they were
wholly inapplicable to the case. We said in *County of
LaSalle* v. *Milligan*, 143 Ill. 321, speaking of propositions
presented to be held as law (p. 330): "If the law is cor-
rectly held, the question of whether the evidence sustains
the finding is purely one of fact, in respect of which the
ultimate and final power of review is by law vested in
the Appellate Courts."

There was no error in holding the propositions sub-
mitted by the interpleader. The delivery of the three
bills of lading or shipping contracts executed by the
Union Pacific to the interpleader operated as a symbol-
ical delivery of the sheep to the latter, (*Taylor* v. *Turner*,
87 Ill. 296, and cases there cited;) and the shipper being
the owner of the sheep, and no opposing interest or claim
arising on the part of the carrier, consignee or prior en-
dorsee of the bill of lading, no endorsement of the bill of
lading to the interpleader was necessary to transfer the
title to it. (*Michigan Central Railroad Co.* v. *Phillips*, 60 Ill.
190; 2 Am. & Eng. Ency. of Law, 243, and cases cited in
note 1, p. 244; *First Nat. Bank* v. *Dearborn*, 115 Mass. 228.)
Nor is any particular form of the contract of shipment

essential to the validity of the transfer. "Even a sale or pledge of the property without a formal bill of lading by the shipper would operate as a good assignment of the property, and the delivery of an informal or unindorsed bill of lading or other documentary evidence of the shipper's property would be a good symbolical delivery, so as to vest the property in the plaintiffs." (*Allen* v. *Williams*, 12 Pick. 297; *First Nat. Bank* v. *Dearborn*, 115 Mass. 219.) The fact that the drafts and contract of shipment were not forwarded together, affected the rights of no one interested in this litigation. The propositions of law held at the request of the interpleader are in conformity with the foregoing views.

It is urged with much earnestness that transferring the sheep from the cars of the Union Pacific to other lines of railroad, and finally putting them on pasture, destroyed the lien of appellee. On this branch of the case the trial court held:

"The unloading of the sheep at Stockdale, Illinois, and the feeding of them at that point by Remington & Co., was simply in accordance with a custom and usage which prevails in shipping live stock, and which is necessary under the laws of this State, and this fact did not interfere in any way with the rights of the Springville Bank in the sheep, or deprive them of such rights as they had at the time the sheep were unloaded from the cars."

We are unable to discover wherein any legal principle is violated by this proposition. It can hardly be contended that merely unloading and placing the animals in a suitable place, to be fed and otherwise cared for, would, as a matter of law, change the possession from the holder of the bills of lading to the shipper. The fact that they were taken to such suitable place over lines of railroad instead of being driven, or that it was the intention of those in charge of them to keep them on pasture for an indefinite time, would, as we can conceive, make no difference. If it be said that these acts

tended to prove a waiver of the lien, or that they operated as a fraud upon third parties, still they could only be held to affect the rights of the intervenor upon proof that it in some way consented thereto, of which there is no proof.    Nor is it pretended that appellant was in any way thereby injured.

The judgments of the circuit and Appellate Courts will be affirmed.                    *Judgment affirmed.*