ELIZA O'FLAHERTY

*v.*

MARGARET MANN *et al.*

*Opinion filed April 16, 1902.*

1. PROPOSITIONS OF LAW—*proposition calling for opinion on question of fact is properly refused.* A proposition submitted as a proposition of law but which calls for the opinion of the court upon a question of fact is properly refused.

2. LIMITATIONS—*when Statute of Limitations will be applied.* If a land owner permits the owner of adjoining land, in fencing his land, to enclose a portion of her land and keep the same, claiming title co-extensive with the enclosure for twenty years, the bar of the Statute of Limitations will be applied.

3. SAME—*what does not suspend running of Statute of Limitations.* If the owner of land encloses a strip of adjoining land with his own, claiming ownership, planting trees and exercising other open acts of ownership, the fact that he enters into possession of the remainder of the tract on the other side of the fence under a lease does not suspend the running of the statute in favor of his possession of the strip over which he is exercising acts of ownership.

APPEAL from the Circuit Court of Kane county; the Hon. GEORGE W. BROWN, Judge, presiding.

BOTSFORD, WAYNE & BOTSFORD, for appellant.

RUSSELL & HAZLEHURST, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an action in ejectment, originally begun in the city court of the city of Elgin, where a trial was had and a judgment rendered for plaintiffs. A new trial was taken

under the statute and the venue was changed to the circuit court of Kane county, where, upon trial before the court without a jury, judgment was again rendered for plaintiffs.

The evidence produced on the hearing is very conflicting. On March 17, 1866, the appellant purchased from John Waite the west half of lot 1 in block 26, in Kimball's third addition to Elgin, and on March 14, 1868, Michael Mann received a deed of conveyance of lot 3, in the same block, from the same grantor. The evidence tends to show he was in possession of and built on said lot about the year 1866. Lot 3 is immediately north of and adjoins lot 1. Michael Mann was a brother of appellant, the husband of Margaret Mann, one of the appellees, and the father of the other appellees. It appears from the evidence that shortly after Michael Mann purchased lot 3 there was one continuous fence erected around that lot and the west half of lot 1. It further appears from the greater weight of the testimony that in the year 1867 or 1868 there was a partition fence erected about forty-seven feet south of the southerly line of lot 3 as Kimball's addition was platted and recorded, thereby including that much of appellant's lot 1 with Michael Mann's lot 3. The evidence also shows that this partition fence was a direct continuation of the partition fence between lots 2 and the easterly half of lot 1. The evidence shows that lot 1 was as long as and lay south of lots 2 and 3. Shortly after Michael Mann went into possession of lot 3 he enclosed the same, including the forty-seven feet which he had fenced off and which was platted as a part of lot 1. This forty-seven foot strip is the tract of ground that is involved in this controversy. Appellees claim title to the same as devisees of Michael Mann, who, they claim, acquired title by twenty years' adverse possession. It appears from the greater weight of evidence that appellant was never in possession of that part of lot 1 north of the division fence. For four

or five years after Mann purchased lot 3 the appellant herself cultivated the west half of lot 1 up to this division fence, and planted it in corn, oats and potatoes. After she had thus held possession of lot 1 until 1872 or 1873, it seems that she entered into an understanding with Michael Mann that in consideration of his keeping the fences in repair he might have the use of the west half of lot 1, and thereafter Mann seemed to have control and possession, with her permission, of that part of lot 1. It further appears, from the evidence, that Mann made little or no use of lot 1. In fact, the only evidence tending to show any use on his part was the occasional pasturing of horses and colts thereon. Michael Mann erected a house on the north-east corner of lot 3, and planted one or more rows of trees on his side of the division fence and on the forty-seven foot strip of ground in controversy. The original partition fence, which seems to have been built in 1867 or 1868, was a four-plank fence, and a few years thereafter Michael Mann and one of his sons planted a hedge fence practically upon the line of the board fence. This hedge fence remained there until a short time before this suit was begun, when two sons of appellant, by and under her direction, cut down the hedge and plowed up the forty-seven foot strip. It is contended by appellant that this partition fence was not put in by Michael Mann until after she had surrendered the use of the premises to him, but the preponderance of the evidence is that this fence was erected shortly after Michael Mann bought, and was there for several years while the appellant herself was cultivating the west half of lot 1.

It seems clear from the evidence that the original possession of Michael Mann of the forty-seven foot strip in controversy was hostile and adverse and open in its inception, and the main question for determination is whether or not such possession continued for the statutory period. Mann held this strip from 1868 until about 1898, and the only thing to defeat his possession would

be the effect of the alleged leasing by Mann from the appellant of that part of lot 1 which lay south of the fence, from 1872 or 1873 to his death.

It is also contended by appellant that the court erred in refusing appellant's first, second, third, fourth, fifth, sixth, seventh and eighth propositions of law, and in modifying the fifth instruction. These propositions all call for the opinion of the court upon a question of fact, and the facts stated in each instruction are disproved by the preponderance of the evidence. The facts are not stated hypothetically in these propositions, nor is the opinion of the court as to the law arising thereon asked, but the court, if it held the propositions, was compelled to assume the facts therein stated as established. This is improper. When a proposition calls for the opinion of the court upon a question of fact it may properly be refused. *County of LaSalle* v. *Milligan*, 143 Ill. 321.

We think the evidence in this case plainly shows that when Mann first went into possession of this lot he claimed that his possession extended to the line on which he placed his fence, and that his possession at that time was plainly hostile to that of appellant. This possession, by the fence and the acts of ownership which he exercised over the strip in question, was an actual, visible and exclusive possession, and was acquired and retained under a claim of title inconsistent with that of appellant. There can be no question but that such possession was held until 1872 or 1873, when he took possession of both lot 3 and the west half of lot 1, but from the time he so took possession the evidence shows that he exercised different acts of ownership over lot 3 than he did over lot 1. On this forty-seven foot strip he planted a row of apple trees, which at the time of the trial were from twelve to eighteen inches in diameter. The fence on the south part of the forty-seven foot strip becoming decayed, there was substituted in place of it, as a marked, well-defined boundary between the two tracts of land,

this hedge fence, and this fence was permitted to remain there as a boundary line and under the original possession of Mann without any complaint on the part of the appellant. There could be no doubt but that he claimed the right of possession to the partition fence. It seems that at the time the fence was first put there appellant acquiesced in all the rights of ownership which Mann claimed to possess. Nor was there objection on appellant's part, at any time, to such open and adverse claim until about the year 1898, when, without notice to any one, she had the fence cut down and the strip in controversy plowed up. It is said in *McNamara* v. *Seaton*, 82 Ill. 498, that if an adjoining owner would suffer another, in fencing his land, to enclose a portion of the adjoining tract and keep the same, claiming title co-extensive with the enclosure, for twenty years, no reason is perceived why the bar provided by the statute would not be applied. The mere fact that Mann entered into possession of lot 1 under a lease or by license of the appellant five or six years after he had enclosed with lot 3 the strip in controversy, would constitute no reason why the running of the statute should be suspended, when the original holding of this strip was open and adverse and distinct acts of ownership were continuously exercised by Mann over it up to the time of his death. The evidence as to the use of the appellant's lot by Michael Mann is, that in 1872 or 1873, or some time near there, the appellant quit farming her lot and put the same down in grass; that the fences began to go down for want of attention, and that Michael Mann called her attention to that fact, and an arrangement was made by which he was to keep the fences in repair for the use of the lot. This is the only and the whole arrangement under which he exercised any right or received any benefit of the part of the lot south of the hedge fence grown by him. Had there been no partition fence or acts of ownership exercised by Mann over the strip there might then have been no adverse

possession for twenty years, but from his conduct it is plain that he claimed ownership over this strip, enclosed it with his own, laid it out and improved it with an orchard,—such acts as established a plain, open and visible claim of ownership on his part; while, on the other hand, his use of appellant's lot was no more than an occasional pasturing of a horse or two, or some colts. The character of the possession by Mann over these two lots was so different and distinct and so plainly visible to appellant, and the entire character of his possession of the strip in controversy so inconsistent with her title, that it seems to us that it constituted every element necessary to bring it within the Statute of Limitations.

It further appears, from the evidence, that about 1877 or 1878 Mrs. O'Flaherty became of opinion that she did not have as much land as she was entitled to, and she placed the fence on the south line of lot 1 about fifty feet out, into Summit street, held the same by possession against the city, and the same was thereafter bought from her by the city. It is claimed by appellees that she would be estopped from claiming the strip of land in controversy by reason of the fact that she elected to hold, and did hold, the fifty feet on the south end of lot 1. While such act on her part may not, in law, amount to an estoppel, it is a very strong circumstance tending to show that she recognized the fence placed by Michael Mann between their lots as his south and her north line. It is such a circumstance as could not well have arisen without bringing full knowledge to her of the line as insisted upon by Michael Mann, and the land thus acquired by the extension of her fences south she sold to the city for street purposes for $200.

The evidence is contradictory and hard to reconcile, and after a careful review of all the evidence we are not able to say that the trial court erred in the conclusion reached, and the judgment is affirmed.

*Judgment affirmed.*