FREDERICK RABBERMANN

*v.*

THOMAS J. CARROLL.

*Opinion filed February 17, 1904.*

LIMITATIONS—*when renting land is not a recognition of title.* Renting land for pasturage without any lease describing the premises is not such a recognition of title as interrupts the running of the Statute of Limitations in favor of the tenant as to a strip of land which had for many years been enclosed with the land of the tenant adjoining the tract rented for pasturage.

APPEAL from the Circuit Court of Madison county; the Hon. B. R. BURROUGHS, Judge, presiding.

BURTON & WHEELER, for appellant.

SPRINGER & BUCKLEY, and E. B. GLASS, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is a suit in ejectment, filed October 7, 1898, in the circuit court of Madison county, by Thomas Carroll against Frederick Rabbermann. The land in dispute is a small strip lying between the farms of plaintiff and defendant, Carroll claiming the property by reason of record title and Rabbermann claiming by reason of adverse possession for twenty years. The property owned by Rabbermann was previously owned by Alvis Hauskins, and that owned by Carroll was previously owned by a man by the name of Long. In 1867 Hauskins built the first fence between the two farms, and as there were no corners established, and the land being timber land, he was compelled to guess at the line, and from the survey afterwards made it appears he went too far south and on to the Carroll tract. The fence remained in the same place until the year 1876 or 1877, when Hauskins moved it north about twenty-five feet, making a road south of the fence for his own convenience. About this

time Hauskins rented the Long tract, now owned by Carroll, for pasture, and paid the taxes for the use of the same until he sold to Rabbermann, in the year 1880. Rabbermann, after purchasing the Hauskins land, had possession of the Long tract upon the same terms as his grantor, for a year or so.

There have been two trials of this case in the circuit court, the first resulting in a verdict in favor of appellant. Appellee paying the costs, obtained, under the statute, a new trial, upon which trial a verdict and judgment were obtained in favor of appellee. Appellant prayed an appeal, and assigns of record various errors, but inasmuch as the error assigned relative to the court giving appellee's sixth and seventh instructions is fatal to the whole proceeding, under our view of the law it alone will require our attention.

Appellee's sixth and seventh instructions are as follows:

6. "The court instructs the jury that they are not to include any time that the defendant or his grantor, Alvis Hauskins, had possession of the strip of land in question as tenants in making up the period of continuous possession on part of the defendant or his grantor, required by law to defeat the record title of plaintiff, as explained by the instructions of the court given you in this case.

7. "The court instructs the jury that if they believe, from the evidence, that the defendant's grantor, Alvis Hauskins, became a tenant of the premises owned by the plaintiff's grantor, and occupied it for several years as such tenant before the full period of twenty years had elapsed, then the continuity of possession became broken and the jury should find for the plaintiff, unless the jury believe, from the evidence, that the defendant and his grantor, Alvis Hauskins, had adverse possession of the land in dispute for a period of twenty years after the expiration of such tenancy and prior to the bringing of this suit, March 22, 1889."

Of the sixth instruction, *supra*, it may be said that it assumes that the evidence shows that Hauskins, appellant's grantor, had possession of the strip of land in question during part of the period of the Statute of Limitations as tenant of the title owner thereof, instead of submitting to the jury that question as a question of fact, as the instruction should have done. The seventh instruction tells the jury that if Hauskins, appellant's grantor, "became a tenant of the premises owned by the plaintiff's grantor, and occupied it for several years as such tenant before the full period of twenty years had elapsed, then the continuity of possession became broken and the jury should find for the plaintiff, unless the jury believe, from the evidence, that the defendant and his grantor, Alvis Hauskins, had adverse possession of the land in dispute for a period of twenty years after the expiration of such tenancy and prior to the bringing of this suit." All that is stated in this instruction might be true and appellant still be entitled to recover. The question was, what was the extent of the ownership of plaintiff's grantor and of the plaintiff? If the plaintiff only owned south of the fence in question, as shown by the evidence, and appellant's grantor only leased and used that portion south of the fence as tenant, or if, in any event, Hauskins only leased that portion of the land south of the fence, then it must be apparent that the lease would in no way affect his right or the right of his grantee, appellant. The principle of law which makes the leasing of land by one claiming ownership by virtue of adverse possession from the title owner thereof a bar to his right to so claim as adverse holder during such tenancy, goes upon the ground that by so leasing the tenant recognized the title of the lessor to the premises and holds subservient to the lessor's title, and therefore cannot assert that he holds adversely to the lease which he has accepted and holds under. If the evidence in this

case shows, as we think it tends to show, to say the least, that appellant and his grantors had the strip of land in controversy fenced in with and as a part of the lands owned by appellant's grantor and by appellant as grantee, and that appellant's grantor simply leased that portion of appellee's land from appellee's grantor that lay south of appellant's and appellant's grantor's fence, not leasing by any legal description but leasing simply that within the enclosure for pasture purposes, then it cannot be said, as we think, that such leasing had anything whatever to do with the strip of land in controversy; and upon such state of facts as is supposed in the latter case, the instructions above mentioned were erroneous and in direct conflict with the rule laid down by this court in the case of *O'Flaherty* v. *Mann,* 196 Ill. 304, in which case, on page 308, we said: "The mere fact that Mann entered into possession of lot 1 under a lease or by license of the appellant five or six years after he had enclosed with lot 3 the strip in controversy, would constitute no reason why the running of the statute should be suspended, when the original holding of this strip was open and adverse, and distinct acts of ownership were continuously exercised by Mann over it up to the time of his death. * * * Had there been no partition fence or acts of ownership exercised by Mann over the strip, there might then have been no adverse possession for twenty years, but from his conduct it is plain that he claimed ownership over this strip, enclosed it with his own, laid it out and improved it," etc.

In the case at bar the evidence tends to show the conditions were similar to those in the case above cited. The land south of the division fence was used for pasturage and that on the north was used in farming, being cultivated in wheat and corn and used in common as a part of appellant's farm. Appellant and his grantors had cleared the timber from the land in dispute, or from a considerable portion of it, and had for nearly twenty

years, at the time of the alleged tenancy, occupied it and used it as their own land, and continued so to hold and use it during the alleged tenancy. As we have said, the tenancy was simply for appellant's use as pasture and the rent was merely the payment of the taxes. There was no written lease or other lease giving a legal description of it, and in such case it cannot be said that such use and occupancy of that portion of the land that was south of the fence could legally or necessarily affect the question of ownership of the disputed tract in any way, and we can see no reason, under the circumstances here disclosed, why the tenancy of the Carroll tract by appellant and his grantor could operate as a bar to the running of the Statute of Limitations or militate against appellant's claim of ownership, by reason of adverse possession.

The appellant further complains of the refusal of the court to give his fifth and sixth refused instructions. We think neither of these instructions was accurately drawn. While, in the main, they stated correct legal propositions, the fifth instruction was defective in that it did not state what elements were necessary to create an adverse holding, such as would constitute ownership by the running of the twenty years statute; and the sixth refused instruction contained the same vice with appellee's sixth instruction that was given, in that it assumes that the evidence shows that appellant's grantor and appellant leased or rented only that part of the ground south of the old fence. It was a question for the jury as to what lands were in fact held under the lease, and the instructions should not have assumed anything upon that question unless the evidence was all one way and undisputed.

What is said in relation to the facts in this opinion is not to be regarded as a finding of fact by this court. For our discussion of the instructions we merely assume the facts as contended by the parties, but express no opinion

as to what facts are established by the record, inasmuch as the case must be remanded generally for a trial *de novo.*

We regard the giving of the above mentioned sixth and seventh instructions in behalf of appellee as such error as must reverse the judgment, which is accordingly done, and the cause is remanded to the circuit court of Madison county for such further proceedings as to law and justice shall appertain.

*Reversed and remanded.*